SAVANNAH, FLORIDA AND WESTERN RAILWAY CO.
v. POSTAL TELEGRAPH–CABLE CO. et al.

1. Though a statute authorizing the exercise of the power of eminent domain for the purpose of condemning property for a public use may not provide for an appeal from the award of the assessors of the compensation to be paid for the property condemned, it is not for this reason unconstitutional.
2. In a proceeding instituted by a telegraph company, under the provisions of the act of December 20, 1898, to condemn so much of the right of way of a railroad company as may be necessary for the erection, maintenance, and operation of its telegraph lines, it is not essential that the telegraph company should affirmatively show that, in order to erect, maintain, and operate its telegraph lines between the points proposed, it is necessary for it to condemn such right of way ; nor is it essential for it to show that it is necessary for it to use the particular portions of such right of way which it proposes to condemn.
3. Whether or not " the manner in which the telegraph company proposes to construct its lines " and the location of the telegraph poles, wires, etc., upon the railroad company's right of way, as indicated in the notice served by the telegraph company upon the railway company in the condemnation proceeding, would so essentially injure or interfere with the necessary use by the railway company of its right of way for railroad purposes as to render the grant of an interlocutory injunction proper, is a question to be determined by the trial judge, under the facts and circumstances submitted for his consideration ; and unless his discretion, in this respect, has been clearly abused, this court will not interfere with the same.
4. There was no abuse of discretion in the present case in refusing the injunction prayed for.

Argued February 2, — Decided February 28, 1901.

Motion for rehearing denied March 25, 1901.

Petition for injunction. Before Judge Falligant. Chatham superior court. November 22, 1900.

Chisholm & Clay, for plaintiff.
Garrard & Meldrim, for defendants.

Fish, J. The Postal Telegraph–Cable Company served the Savannah, Florida and Western Railway Company, in the county of Chatham, where the railway's main and principal office is located, with a notice of the intention of the telegraph company to condemn certain portions of the right of way of the railway company from Albany to Thomasville and from Thomasville to Valdosta, through the counties of Dougherty, Mitchell, Thomas, Brooks, and Lowndes, for the purpose of constructing, maintaining, and operating a telegraph line thereon. The railway company sought to enjoin such

condemnation proceeding. Upon the hearing the judge refused to grant an interlocutory injunction; to which ruling the railway company excepted, assigning error upon the refusal to grant the temporary injunction prayed for, upon each and all of the grounds set forth in the petition. The allegations in several of the paragraphs of the petition for injunction, as to the illegality of the condemnation proceeding and the unconstitutionality of the statutes upon which it is based, are so general and indefinite that, when taken in connection with the assignments of error in the bill of exceptions, they do not present any question for consideration by this court.

1. The condemnation proceeding was instituted by the telegraph company under the provisions of the act of December 20, 1898, (Acts 1898, p. 54). The petition of the railway company for an injunction alleged: "That no valid appeal is provided by law under the statutes of the State of Georgia and particularly under the statutes referred to in the notice hereto attached, allowing an appeal to petitioner from the decision of the arbitrators, which failure makes such statutes unconstitutional, illegal and void; and if said condemnation proceedings are allowed to be prosecuted, any award thereunder against petitioner would be the taking of property without due process of law, illegal and void." The act of December 20, 1898, amends the condemnation statutes codified in sections 4657 to 4686, inclusive, of the Civil Code, by providing a method whereby a telegraph company may, in one proceeding instituted in a single county, condemn so much of the right of way of a railroad company as may be necessary for the purpose of erecting, maintaining, and operating its telegraph lines along and upon such right of way. This act does not itself provide for any appeal from the award of the assessors therein provided for; and the contention of the railway company is that the provisions in reference to an appeal, contained in the sections of the Civil Code which it amends, do not and can not apply to condemnation proceedings instituted under this amendatory act. It will be observed that the constitutionality of the statute is attacked solely on the ground that no appeal is therein provided for. We will not stop to inquire whether or not there can be an appeal from the award of the assessors in a condemnation proceeding instituted under the provisions of the act of December 20, 1898; for we are clearly of opinion that a mere failure to pro-

vide for an appeal in a condemnation statute does not render the statute unconstitutional. It takes more than this to invalidate the statute upon constitutional grounds. In *Oliver* v. *Union Point & White Plains R. R. Co.*, 83 *Ga.* 257, it was held: "The method of ascertaining what is just and adequate compensation is matter for adoption and regulation by the legislature. Inasmuch as trial by jury is not a constitutional right in cases involving the power of eminent domain, a statutory appeal given in such cases from the award of assessors is subject to legislative discretion both in its allowance and in the consequences of its allowance, the latter being in the nature of terms and conditions of the appeal system."

Counsel for the railway company rely upon the decision of this court in *Southwestern Railroad Co.* v. *Atlantic Telegraph Co.*, 46 *Ga.* 53; but Chief Justice Bleckley, in the case from which we have just quoted, correctly says that the decision in that case "is no direct adjudication on this point, there being another ground upon which the decision could be and was chiefly rested." It is well settled that unless the right of appeal is guaranteed by the constitution, the legislature may grant or withhold it, or impose such conditions as it shall see fit. 2 Lewis, Em. Dom. § 537, p. 1197; Cooley's Const. Lim. (5th ed.) 697; Proffatt, Jur. Tr. § 104; Rand. Em. Dom. § 316; Mills, Em. Dom. § 91; and the numerous cases cited by these authors. In the absence of constitutional provisions on the subject, there can be no appeal unless granted by statute. Lewis, Em. Dom. § 535, p. 1191, and cases cited. Unless there are express constitutional provisions upon the subject, the authorities almost uniformly hold that it is not a constitutional right to have the compensation to be paid for property condemned and taken for public use ascertained by a common-law jury. 2 Lew. Em. Dom. § 311, and the great number of cases cited in note 26.

2. The petition further alleges "that the land sought to be condemned and the rights and privileges sought to be acquired, and particularly set forth in the notice, . . are not necessary for the use of said Postal Telegraph-Cable Co., and under the laws of this State it has no right to acquire the same by condemnation proceedings;" and further alleges, in substance, that the particular portion of the right of way specified in the condemnation notice is not necessary for the telegraph company's use in constructing, maintaining, and operating its line along the right of way of the

railway company. It is contended by counsel for the plaintiff in error that it was incumbent upon the telegraph company to show that it was necessary for it to condemn the right of way in question, and that it was necessary to condemn the particular portion thereof which it specified in the notice served upon the railway company. We can not agree with this contention of counsel. When the General Assembly passed the act authorizing and empowering a telegraph company to condemn so much of the right of way of a railroad company as might be necessary for the purpose of erecting, maintaining, and operating its telegraph lines through and upon such right of way, and gave to the telegraph company the right, in one proceeding instituted in a single county, to condemn the right of way in any number of counties through which the same might extend, it passed upon the necessity of condemning such a right of way for such a purpose. When it, in effect, enacted that a telegraph company could, in one proceeding, condemn a strip of land extending through the entire length of a railroad right of way, it impliedly declared that it was necessary, for the public good, that a telegraph company should not be compelled to seek a route for the erection of its telegraph line other than through and upon the right of way of a railroad company. The legislature was obliged to know that a telegraph company, armed with the power of eminent domain, could erect a telegraph line traversing several counties without running the same through and along the right of way of a railroad company; and it would not do, therefore, to hold that, before the telegraph company could exercise the power conferred upon it by the act of 1898, it must first affirmatively show that there was no other feasible and practicable route which it could adopt and acquire, in order to reach and connect the points between which it desired to erect, maintain, and operate its lines. The Postal Telegraph–Cable Co. had the right to condemn the right of way of the Savannah, Florida & Western Railway Co., between the points named in the condemnation notice, without first showing that, in order to connect these points by its telegraph lines, it was absolutely necessary for it to use the right of way of the railway company. Nor was it necessary for the telegraph company to show that the particular portion of the right of way specified in the notice was necessary for the telegraph company's use in constructing, maintaining, and operating its proposed telegraph line.

When the right to condemn the right of way of the railway company was conferred upon the telegraph company, the power to select such portion and so much of the right of way as might be necessary for erecting, maintaining, and operating its telegraph lines was conferred upon it, subject to the limitation that it could not select and condemn such a portion of the right of way as would essentially injure or interfere with the public use to which the property was already devoted. It was not obliged to show there was an absolute necessity for it to take the particular strip of land described in its notice. In the very nature of things it would be impossible to show this, for a similar strip located almost anywhere else on the right of way, at a sufficient distance from the railroad track, might answer for the purpose in view, and certainly numerous other locations for such a strip could be found upon the right of way. All that was required of it was that it should, in the selection of the particular portion of the right of way which it proposed to condemn, comply with the requirements of the statute, and select such a portion as would not unreasonably and materially injure or interfere with the use of the right of way for railroad purposes. In 10 Am. & Eng. Enc. L. (2d ed.) 1057, it is said, when the right of eminent domain is granted, "the grantee is allowed to exercise much discretion in determining what and how much land shall be taken, and where and how the work shall be located. In general, if there appears to be no bad faith on the part of the grantee in the matter of location, his discretion will not be interfered with. [Citing numerous authorities.] The amount of land that any grantee of the power of eminent domain may take is only as much as is necessary for the construction and operation of the work; but the necessity is not such an imperative necessity as would render the construction and operation impossible without the amount of land in question. The fact that there is other land in the community which seems to be convenient for the use in question, and the taking of which would entail less damage, is not a sufficient reason for interfering with the taking of certain lands by the company."

3. It appears from the record that the telegraph company was seeking to place its poles on the right of way thirty feet from the center of the track; that the amount of ground to be occupied by each pole was about one square foot; that the poles were to be twenty-five feet in length and to extend above the ground twenty

feet, with a cross-arm near the top, six feet in length, upon which wires were to be strung; that another telegraph company, by contract with the railroad company, had constructed and was maintaining and operating its line on the opposite side of the track, the poles on which said line was erected being about twenty-five feet above the ground and located, generally, about thirty feet from the outer edge of the cross-ties upon which the track was laid. From these facts we think the judge could reasonably conclude that the railway company would not suffer the damages which it alleged would probably result from the construction of the proposed telegraph line, notwithstanding several witnesses made affidavits that great damages might result to the railway company from the blowing down by storms of the poles and wires of the contemplated line.

In Mobile & Ohio R. R. Co. *v.* Postal Telegraph-Cable Co., 128 Ala. 21, it was held: "A telegraph company, in the exercise of the right of eminent domain given to it by the laws of the State, can condemn a right of way within that part of the right of way of a railroad company not in actual use, when the proposed line of telegraph will be so constructed as to produce no material interference with the railroad company's free exercise of its franchise, or with the actual operation of the road." In St. Louis & Cairo R. R. Co. *v.* Postal Telegraph-Cable Co., 173 Ill. 508, the telegraph company's petition to condemn the right of way of the railroad company stated that the poles would not be less than twenty-five feet long, one foot in diameter at the base, and be set in the ground at a depth of not less than five feet; that upon the poles suitable arms, six feet in length, would be fastened near the top, on which would be strung wires of suitable material; that the poles would be placed one hundred and seventy-five feet apart from each other and at a distance of not less than twenty-five feet from the outer edge of the railroad track, or at such point as might be agreed upon by the telegraph company and the railroad company. On page 519 of the report, the court, speaking through McGruder, J., after stating: "It is further urged that the petition fails to show that the proposed telegraph line will not incommode the public use of the railroad," said: "The location of the line, as indicated in the petition, shows that the public use of the railroad will not be seriously incommoded." It will be seen that the facts there in reference to the proposed location of the telegraph line, relatively to the railroad company's track, the size

of the poles, their length, the depth that they were to be placed in the ground, etc., were practically the same as those in the present case. Whether or not the location of the telegraph poles, wires, etc., upon the railway company's right of way, as indicated in the notice served by the telegraph company upon the railway company, would so essentially injure or interfere with the necessary use by the railway company of the right of way for the public purposes for which it was empowered to acquire and had acquired it as to render the grant of an interlocutory injunction proper, was a question to be determined by the trial judge, under the facts and circumstances submitted for his consideration. Unless the discretion exercised by him, in this respect, was clearly abused, this court would not interfere with the same. We can not see that there was any abuse of discretion in this case.

*Judgment affirmed. All the Justices concurring, except Simmons, C. J., and Cobb, J., absent.*