## SAVANNAH, FLORIDA AND WESTERN RAILWAY CO.
## v. POSTAL TELEGRAPH-CABLE CO.

1. The act approved December 18, 1894 (Acts 1894, p. 95, Civil Code, §§ 4657 – 4686), " to provide a uniform method of exercising the right of condemning, taking, or damaging private property," is general in its nature, and applies to all persons, natural and artificial, who come within its purview.   The act approved December 20, 1898 (Acts 1898, p. 54), amended the existing law, which provided a uniform method for exercising such right of condemnation, only as to telegraph companies which seek to condemn rights of way of railroad companies for the purpose of erecting thereon lines of telegraph.   As amended the law is general, and by its provisions due process of law is afforded to the railroad companies whose property is sought to be condemned.

2. The necessity for taking private property for public use is a question for legislative determination, and the provisions of the code relating to such taking are not, because they fail to provide for a special tribunal to pass upon such necessity, violative of the constitutional inhibition against taking the property of the citizen without due process of law.

3. The description of the property sought to be condemned, as made in the original notice, was not open to the objection that it was vague and indefinite. The amendment to the original notice was properly allowed, and inured to the benefit of the railway company.

4. Construing section 4679 of the Civil Code as amended by the act of 1898, a telegraph company which has proceeded to condemn a sufficiency of the right of way of a railway company, for the purpose of erecting a line of telegraph, may, pending an appeal from the award of the assessors, lawfully proceed to construct its line on such right of way after it has deposited the amount of the award in the office of the clerk of the superior court of the county where such proceedings were had.   The record does not show any error committed by the trial judge in granting the injunction.

Submitted March 1,— Decided June 11, 1902.

Injunction.   Before Judge Falligant.   Chatham superior court. July 15, 1901.

*William L. Clay*, for plaintiff in error.
*Garrard & Meldrim* and *J. R. McIntosh*, contra.

LITTLE, J.   The Postal Telegraph-Cable Company instituted a proceeding in Chatham county, where the principal office of the Savannah, Florida and Western Railway Company was located, to condemn a portion of the right of way of that company, extending through the counties of Dougherty, Mitchell, Thomas, Brooks, and Lowndes.   The proceeding was instituted under the provisions of an act approved December 20, 1898 (Acts 1898, p. 54), which are codified in the Civil Code, §§ 4657 – 4686.   Subsequently the

railway company filed an equitable petition in which it prayed that the condemnation proceeding instituted by the telegraph company be enjoined. That prayer was denied in the court below, and the judgment refusing an injunction was brought to this court for review, where it was affirmed, as reported in 112 *Ga*. 941. By this decision two legal propositions, which are res adjudicata as to the parties in this case, were ruled. The first was, that although a statute which authorized the exercise of the power of eminent domain for the purpose of condemning private property for public use may not provide for an appeal from the award of the assessors of the compensation to be paid for the property condemned, it is not for this reason unconstitutional; and the second, that in a proceeding instituted by a telegraph company under the provisions of an act of the legislature of Georgia, approved December 20, 1898, to condemn so much of the right of way of a railway company as may be necessary to erect, maintain, and operate a telegraph line between certain points, it is not essential that the telegraph company should affirmatively show that in order to do so it is necessary for it to condemn such right of way, nor to show that it is necessary for it to use the particular portion of the right of way that it proposes to condemn. After this, the railway company, having amended its petition, again applied for the injunction for which it originally prayed. The injunction was for the second time refused by the court below, and that judgment was also affirmed by this court in a ruling which is reported in 113 *Ga*. 916. The proceeding to condemn the right of way of the plaintiff in error resulted in an award which assessed the damages to be paid to the railway company at $6,000. After this award had been made, and during the pendency of the petition under which the injunction had been refused, the telegraph company commenced the work of constructing a telegraph line over the right of way of the railway company, by erecting poles on which to place its wires, having first paid into the registry of the superior court of Chatham county the amount of the award made by the assessors. The railway company met this work of construction with force, and cut down, dug up, and removed from its right of way the poles which were erected by the telegraph company. Then the latter, by an independent proceeding, asked that the railway company be enjoined from interfering with the construction of its telegraph line, from obstructing such

construction, and from injuring the property of the telegraph company on the right of way of the railway company. An interlocutory injunction was granted according to the prayer of the petition. To the grant of this injunction the railway company excepted ; and the question for us to determine is whether the judge who heard the case and granted the injunction committed error in doing so.

1. It is contended by counsel for the plaintiff in error that the grant of the injunction was error, and that the provisions of the Code of Georgia and of the acts of the legislature under which the condemnation proceedings were had are unconstitutional, first, because the code provisions and the acts "lack due process of law," and second, because they deny to the railway company (in this case) the equal protection of the laws. The reasons urged in the brief of counsel why due process of law is not afforded by the code and the statutes of this State are, that they are deficient (1) in "failing to provide for effective creation of competent tribunal," (2) "failing to make provision empowering and requiring tribunal to pass upon and adjudicate every material question involved, and to consider and pass upon every material defense," (3) "failing to provide machinery for enforcing award," (4) "failing to provide just compensation for property taken." Under the second title of our Civil Code, which refers to special rights, remedies, and proceedings, is contained the general law of force in this State in reference to the condemnation of private property. Section 4657, which is the first section in this article, declares that all corporations or persons authorized to take or damage private property for public purposes shall proceed as indicated in said chapter. Article 2 of that chapter provides for the appointment of assessors. Article 3 provides for the hearing before the assessors. Article 4 provides for an appeal from the award of such assessors to the superior court of the county where the award is filed; and other sections of this chapter make particular provision for ascertaining the value of the property condemned and the issuance of executions for the amount of the award, and, as we think, inaugurate a constitutional system which provides for just compensation to be paid for property taken under the exercise of the right of eminent domain. By the provisions of this chapter, which is general in its terms, it is expressly provided in section 4685 that the method of condemnation therein set out applies to telegraph companies, as well as to all persons,

natural or artificial. This chapter is a reproduction in codified form of an act approved December 18, 1894 (Acts 1894, p. 95). Besides an act approved in 1897, the terms of which it is not necessary to consider here, an amending act approved December 20, 1898 (Acts 1898, p. 54), was passed, " so as to provide for the contents, direction, and service of the notice contemplated by section 13 of said act, and by section 4669 of said Code [of 1895], when a telegraph company undertakes to condemn a portion of the right of way of a railroad for the purposes of constructing, maintaining, and operating its telegraph lines along and upon such right of way," etc. By the terms of this act certain sections of the code, embodied in chapter 9, were amended as to cases where telegraph companies undertake to condemn the right of way of railroad companies for the purpose of constructing thereon telegraph lines. These changes refer, among other things, to the notice which the chapter requires to be given, and declare that in such cases there need be but one condemnation proceeding against the same railroad company, and that if the railroad company has a main or principal office in this State, the proceedings (for condemnation) shall be had in the county in which the main or principal office is located. They give to the assessors, which were provided by the act of 1894, power to make their findings as to the damages, on the testimony of witnesses, etc. By this amending act of 1898 no change was made in the provision of chapter 9 of the Civil Code in relation to the condemnation of private property, except in proceedings instituted by a telegraph company to condemn the right of way of a railroad company; and as amended the act is general in its terms. The provisions incorporated by the act of 1898 became a part of the law in relation to the condemnation of private property, and were an addition to the law existing at the time of the passage of the act.

It is urged by counsel for the plaintiff in error, that the act of 1898 is unconstitutional, because it makes no provision for the appointment of assessors, and fails to provide special machinery, in cases to which it is applicable, for enforcing the award made; and the conclusion is drawn that for these reasons the act does not provide just compensation to be paid to the owner of the property taken. This contention is not sound. The act of 1898 is not to be taken independently of and disconnected from the provisions of the act of 1894. The latter act, as amended by the act of 1898,

in our opinion, meets every objection urged by counsel that the Georgia statutes relating to the condemnation of private property for public purposes are unconstitutional in that they lack due process of law.    It is neither necessary nor proper to incorporate into an amending act the provisions of the act sought to be amended. When the code provisions as amended are fairly construed, and the scheme of the existing law in relation to condemnation proceedings is put into operation, it will be found that provision for creating a competent tribunal, invested with power to assess damages, has been made; that the award of this tribunal shall be made on evidence; that an appeal from the award to the superior court has been provided for; and finally that the method of enforcing it is declared to be by writ of execution.    It is true that the code designates the ordinary of the county where the land lies, or the franchise sought to be condemned is exercised, as the officer to select the arbitrator for the company, if it refuses to select one; and that the award when made is to be filed in the office of the clerk of the superior court of the county where the land lies, or the franchise sought to be condemned is exercised.    It is further true that the amending act does not in direct terms change the provisions of the code in these and similar particulars; but when the scheme of the amending act is considered and the whole act is fairly construed, it is evident that it was the intention of the legislature to designate the ordinary, and office of the clerk of the superior court, of the county where the proceedings to condemn are instituted, as the officer to select the assessor, and as the office in which the award shall be filed.    So construed, effect is given to the amending act. The right of condemnation is preserved, and a system which will afford just compensation for property taken for public purposes is adopted, which in all respects affords to the owner of the land due process of law.    By the construction we give to the act as a whole, no violence is done to the words which it contains.    The original and amendatory acts, so construed, furnish a complete scheme for the condemnation of private property.    Without it, the particular condemnation provided in the amending act must fail. Treating the latter as making an addition to the original act, regarding its purposes, and giving to the words which it contains their full signification, it must be evident that the legislative intent is expressed by such construction, and the uniformity of the plan of condemnation devised is preserved.

2. One of the principal reasons urged by counsel for the plaintiff in error in support of the contention that the law under which the condemnation proceedings in the present case took place is unconstitutional is, that in neither the act of 1894 nor the amendatory act of 1898 is any provision made for a hearing, preliminary to the condemnation, upon the question of the necessity of the seizure sought to be made; and it is argued at considerable length that this failure renders the law repugnant to the constitutions of the United States and of the State of Georgia, in that it is a taking of private property without due process of law. Without going into the constitutionality of the law now under consideration, Fish, J., in the case of *Savannah R. Co.* v. *Postal Tel. Co.*, 112 *Ga.* 941, discussed exhaustively the question of adjudicating the necessity for condemnation, and his reasoning in the case cited applies with irresistible force to the present case. We quote from the opinion on page 944, as follows: " When the General Assembly passed the act authorizing and empowering a telegraph company to condemn so much of the right of way of a railroad company as might be necessary for the purpose of erecting, maintaining, and operating its telegraph lines through and upon such right of way, and gave to the telegraph company the right, in one proceeding instituted in a single county, to condemn the right of way in any number of counties through which the same might extend, it passed upon the necessity of condemning such a right of way for such a purpose. When it, in effect, enacted that a telegraph company could, in one proceeding, condemn a strip of land extending through the entire length of a railroad right of way, it impliedly declared that it was necessary, for the public good, that a telegraph company should not be compelled to seek a route for the erection of its telegraph line other than through and upon the right of way of a railroad company. . . Nor was it necessary for the telegraph company to show that the particular portion of the right of way specified in the notice was necessary for the telegraph company's use in constructing, maintaining, and operating its proposed telegraph line. When the right to condemn the right of way of the railway company was conferred upon the telegraph company, the power to select such portion and so much of the right of way as might be necessary for erecting, maintaining, and operating its telegraph lines was conferred upon it, subject to the limitation that it could not select and condemn

such portion of the right of way as would essentially injure or interfere with the public use to which the property was already devoted.   It was not obliged to show there was an absolute necessity for it to take the particular strip of land described in its notice." In 1 Lewis on Em. Dom. §§ 162, 238, the rule is laid down that in cases where the right of eminent domain is exercised, the necessity for taking the particular land in question is one exclusively for the legislature, and in § 238 a quotation is made from the case of Boom Co. *v.* Patterson, 98 U. S. 406, where the following language is used:   "When the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance.   The property may be appropriated by an act of the legislature, or the power of appropriating it may be delegated to private corporations, to be exercised by them in the execution of works in which the public is interested."   See also the cases cited in the note to § 238 of 1 Lewis on Eminent Domain, and the authorities reviewed by Mr. Justice Fish in the case of *Savannah R. Co.* v. *Postal Tel. Co.*, supra.   Under the constitution of this State (Civil Code, § 5729), private property can not be taken for public purposes except in cases of necessity, and the laws authorizing the condemnation of private property and providing a means for its accomplishment permit the seizure of only so much property as may be necessary for the purposes authorized.   See Civil Code, § 4658, and Acts 1898, p. 54.   When the legislature grants to a corporation the right to exercise the power of eminent domain, it alone, according to all authority, is the judge of the necessity for the exercise of the right.   If the corporation should exceed the powers granted it, and take more land than is authorized, or if it should otherwise exceed the powers granted to it by the legislature, it would place itself without the pale of authority and be amenable to a court of equity.   As the necessity for the exercise of the power to condemn private property is passed on by the legislature, and as there is always open a tribunal to pass upon the lawfulness of the manner in which the right is exercised, it can not be said that the law of Georgia, which authorizes the taking of private property for public purposes, does not provide " due process of law " in rendering such taking effectual.

3. The original notice of condemnation served by the telegraph company on the railroad company stated that the proposed line

would be constructed " with poles about twenty-five feet in length, and one foot in diameter at the base, and planted at a depth of five feet in the ground and about one hundred and sixty-seven feet apart on said right of way, making about thirty-one poles to the mile; and said poles will be situated about thirty feet from the center of the railroad-track, which is located about the center of your right of way, being on an average of one hundred and fifty feet in width. . . Said poles will nowhere be planted upon any of the embankments of said railway company, nor will said wires be attached or fastened to any of the bridges or trestle work of said railway company." We fail to see how, under the circumstances, a more definite description could be given as to the location of the proposed line. The railroad company, however, demurred to the notice, and the telegraph company amended by inserting, at a suitable point in the description of the proposed location of its line, the words: " or at such other distance from the tracks as may be preferred and designated by your company, not nearer the outer edge of the right of way than six feet.". It needs no argument to show that the amendment, offering as it did to allow the railroad company to select the line which should be followed, even had it been indefinite, was not one of which the railroad company can justly complain. The amendment was germane and properly allowed.

4. It is provided by the Civil Code, §4679, that the entering of an appeal and the proceedings thereon in condemnation cases shall not hinder or delay in any way the " work or the progress thereof, if the applicant to condemn shall pay or tender to the owner the amount of the award, and, in case of the refusal of the owner to accept the same, deposit the amount awarded with the clerk of the superior court for the benefit of the owner." It appears that in the present case the telegraph company appealed from the award of the assessors, depositing with the clerk of Chatham superior court the sum of $6,000 (the amount of the award), and proceeded with the work of erecting the line. It is contended by the railway company that this was not a compliance with the law upon the subject, because the code section above quoted had no reference to telegraph companies condemning the right of way of railroad companies, and that even if section 4679 is applicable to such a case, the words, " clerk of the superior court," therein used, are applicable to the clerk of the superior court of the county where the land lies which

is sought to be condemned, and consequently a single deposit in the county where the proceedings were had is not . sufficient to meet the requirements of the law.    We do not think that there is any merit in this contention.    It is true that section 4679 of the Civil Code as originally enacted had reference to appeals in condemnation proceedings brought in the county where the land sought to be condemned was located.    But the act of 1898, as we have before said, made provision, in a case where a telegraph company sought to condemn portions of the right of way of a railroad company, for the condemnation proceedings to be had in a single county.    We know of no good reason why this method should not be effectual in protecting the landowner.    The law in regard to appeals was left unchanged; and reading section 4679 of the Civil Code as amended by the act of 1898, and giving the words, " clerk of the superior court," that meaning which is most consonant with the evident legislative intent, it is clear that, in order to enable the telegraph company to proceed with its work pending the appeal, it is only necessary for it, after the refusal of the railroad company to accept its tender of the amount of the award, to deposit that amount in the office of the clerk of the superior court of the county where the condemnation proceedings were had.

In the elaborate brief filed by the able counsel for the plaintiff in error many points are presented which are to a large extent reiterations of those disposed of in the foregoing discussion.    We have gone carefully and laboriously over the voluminous record and the briefs of counsel on each side of the case, and have reached the conclusion that the court below did not err, for any reason assigned in the bill of exceptions, in granting the injunction which is the subject-matter of review.

*Judgment affirmed.    All the Justices concurring, except Lewis, J., absent.*