WESTERN UNION TELEGRAPH CO. v. ATLANTA & W. P. R. CO.

(District Court, N. D. Georgia.    July 14, 1917.)

No. 66.

1. ADVERSE POSSESSION ☞60(6)—PERMISSIVE POSSESSION—RAILROAD RIGHT OF WAY.

Where a telegraph company's occupancy of a railroad right of way for its telegraph line was permissive at all times, and in no sense adverse or under a claim of right, or at least was without any notice of such claim to the railroad company, no prescriptive right was acquired.

2. TELEGRAPHS AND TELEPHONES ☞20(4)—ACTIONS BY COMPANIES—PLEADING.

In a suit by a telegraph company against a railroad company, on whose right of way it maintained its lines to restrain the railroad company from interfering with the maintenance of its lines, in which it was held that its right of occupancy was measured by its contract with the railroad company, and ended when the contract was terminated in accordance with its terms, an amendment to the bill, setting out copies of papers fully pleaded by description and a statement of their contents in the bill as originally filed, held not to have strengthened complainant's case.

In Equity. Suit by the Western Union Telegraph Company against the Atlanta & West Point Railroad Company. On motion to dismiss. Motion sustained.

Wm. L. Clay, of Savannah, Ga., for plaintiff.

R. E. Steiner, of Montgomery, Ala., and Sanders McDaniel, of Atlanta, Ga., for defendant.

NEWMAN, District Judge. This case is now before the court on a motion to dismiss the bill, notwithstanding the amendment at great length tendered by the plaintiff. The case as originally determined in this court will be found in 227 Fed. 465. The decision of the Circuit Court of Appeals for this circuit, to which the case was taken from this court, is found in 238 Fed. 36, —— C. C. A. ——. It will be seen, from these cases and the opinions of the courts, that the decision of this court was affirmed, with leave to the plaintiff to amend.

The amendment which is now tendered is simply an amplification of what was fully set out in the original bill. The bill now simply sets out copies of a large number of papers, which were fully pleaded, by description and by a statement of their contents, in the bill as originally filed. The amendment is an extensive history of the telegraph company from three years prior to the Civil War down to this time. There

is reliance in this amendment, apparently, on a claim of prescriptive right, and certain papers offered to be treated as color of title in order to work out that prescription; but there is nothing whatever in the bill to show that the occupancy of the railroad company's right of way by the telegraph company was otherwise than permissive. The statutes of the state covering much of the law concerning telegraph companies and the acquirement of rights of way by such companies, as well as the statutes with reference to prescription in Georgia, are set out in the amendment, and much other matter is set out, none of which, I think, strengthens the case made by the plaintiff in its original bill.

[1] There is a letter, attached as an exhibit to the amendment, from Wm. S. Morris, president of the Confederate Telegraph Company, and Thos. H. Wynne, treasurer of that company, which is pleaded here, if I understand it, as color of title, if not as a muniment of title. It is nothing, however, except a description of the operations of the Confederate Telegraph Company during the Civil War, and, as has been said, no claim of prescription can be sustained here, as the whole record shows that the entire occupancy by the telegraph company of the defendant's right of way was permissive, and in no sense adverse or under a claim of right, certainly not with any notice of such claim to the defendant railroad company.

[2] Following this is Exhibit E, which is a transfer by Wm. S. Morris, president of the Confederate Telegraph Company, to the American Telegraph Company, which is that:

"In consideration of one dollar and other valuable considerations, the Confederate Telegraph Company release, quitclaim, and assign to the American Telegraph Company (chartered by the state of New Jersey) all the telegraph lines and property put up or held by said Confederate Telegraph Company within the states of Virginia, North Carolina, South Carolina, Georgia, Alabama, Mississippi, and Louisiana."

Attached to that is a scroll and this language: "[L. S.] The Company have never adopted a seal"—signed, "Thos. J. Wynne, Treas. & Secty. C. T. Co." And next is Exhibit F, which is a contract with the Atlanta & West Point Railroad Company, properly executed by the Atlanta & West Point Railroad Company, John P. King, president, and W. P. Orme, secretary and treasurer, and by the American Telegraph Company, by E. S. Sanford, president, and attested by C. Livingston, secretary, and following this the language:

"The charter of this company does not require a seal, but all contracts must be signed as above.          T. H. Wynne."

This paper says:

"The party of the first part [the railroad company] grants to the party of the second part [the telegraph company] the exclusive right to put up a telegraph line or lines on the land and along the railroad of said party of the first part between Atlanta and West Point, and the party of the second part contracts to obtain the annulment of and the delivery to the party of the first part of the written contract made between the Atlanta & West Point Railroad Company represented by their general superintendent, Geo. G. Hull, and Wm. S. Morris, president of the Confederate Telegraph Company bearing date June 28, 1862."

Certain provisions are then made concerning the use of the telegraph lines to be constructed as stated. The American Telegraph Company, it is understood, subsequently transferred and assigned all of its rights to the Western Union Telegraph Company; but whatever rights the Western Union Telegraph Company has been heretofore holding stand on the agreement subsequently made between it and the Atlanta & West Point Railroad Company.

In the agreement of 1902, between the telegraph company and the railroad company, it is expressly provided, as stated in the former opinion in this case, that:

"The provisions of this agreement shall supersede said agreement heretofore mentioned, dated the 17th day of January, 1891, between the parties hereto, and any other agreements between the parties hereto or their predecessors respectively in the ownership or control of their respective properties."

The rights of the telegraph company, under this agreement, were to continue for a period which had expired when the notice herein stated was given. I see nothing in this amendment whatever which gives strength to the plaintiff's case, or which makes a case on which it is entitled to have a decree in its favor. Much law is set out at great length, but there is nothing whatever, so far as I can see, which makes a case under the decision of this court heretofore made, and especially under the decision of the Circuit Court of Appeals, affirming the judgment and decree made here.

The motion to dismiss the amendment, and the bill as amended, must be sustained.