WESTERN UNION TELEGRAPH CO. v. LOUISVILLE & N. R. CO.

(District Court, N. D. Georgia. July 14, 1917.)

No. 67.

Injunction  ⬱194—Alternative Relief—Equitable Condemnation.

 The difficulties experienced by a telegraph company in its efforts to condemn the right to maintain its telegraph lines on the right of way of a railroad, on which it had been maintaining its lines under a contract with the railroad, *held* not to authorize a court of equity, in a suit in which injunctive relief against interference with its lines was denied, to effect an equitable condemnation of an easement, for the purpose of making a complete and final disposition of the entire controversy.

In Equity. Suit by the Western Union Telegraph Company against the Louisville & Nashville Railroad Company. On motion to dismiss an amendment to the bill. Motion sustained.

Wm. L. Clay, of Savannah, Ga., and Brewster, Howell & Heyman, of Atlanta, Ga., for plaintiff.

Henry L. Stone, of Louisville, Ky., and Tye, Peeples & Jordan, of Atlanta, Ga., for defendant.

NEWMAN, District Judge. This case, as formerly determined by this court, will be found in 229 Fed. 234, and the decision of the Cir-

cuit Court of Appeals, partly reversing the judgment and decree of this court, is reported in 238 Fed. 26, —— C. C. A. ——. There is a motion to dismiss the amendment now made under the authority granted by the Circuit Court of Appeals, so far as it seeks to set up any rights other than that given to it by the decision of the Circuit Court of Appeals as having been acquired under the deed of February 9, 1898, from the Atlanta, Knoxville & Northern Railway Company to the telegraph company.

The contents of the amendment are very much like those in the case of Western Union Telegraph Co. v. Atlanta & West Point Railroad Co., 243 Fed. 685, already decided, except as to the allegations in the amendment with reference to the endeavor of the telegraph company to obtain by condemnation, under the Georgia statute, the rights which it seeks to acquire and condemn under this bill. The plaintiff first sets out in its amendment the method of condemning property or the acquisition of such rights as it seeks under the laws of Georgia. Statutes are quoted at great length, and also the law as laid down by certain decisions of the courts of the state. Finally coming to the period when the rights given under the contract of June 18, 1884, between the Louisville & Nashville Railroad Company and the Western Union Telegraph Company were about to expire, it is alleged:

"The service which the defendant was called upon and required to perform for your orator under the provisions of said contract of June 18, 1884, increased only slightly as time went by, but the service which the defendant called upon your orator to perform under the provisions of said contract increased with great rapidity, and the telegrams which your orator was requested to send for and in behalf of the defendant, or in its interest, under the terms of the contract, multiplied greatly from year to year. Finding that the service performed by the defendant for it was entirely disproportionate to, and was not adequate compensation for, the services required of it by defendant, your orator, on August 11, 1911, gave to the defendant written notice that one year after that date the said contract of June 18, 1884, would be terminated. Similar notice was at the same time given to each of the railroad corporations who were parties to that contract, or whose railroads had been placed under its operation.

"Efforts were unsuccessfully made by complainant to make agreements with the defendant and the railroad corporations owned or controlled by it for the reciprocal exchange of service which would be reasonable and fair to complainant.

"The attitude of the officers of defendant and of the railroad corporations controlled by it during the time that your orator was attempting to negotiate new contracts, as aforesaid, led your orator to believe that the defendant and the corporations controlled by it, and who were parties to the contract of June 18, 1884, would, upon the termination of that contract under the notice above mentioned, as they soon thereafter did, attempt to force complainant to remove its poles and wires from their respective rights of way and properties. So believing, complainant considered what steps it should take, and what action it should institute, to preserve and protect its telegraph lines, properties, and rights, to prevent interference with, and removal of, the same by said railroad companies, and each of them, and to insure complainant's ability to perform without interruption and perpetually its public or quasi public duties as a common carrier and as a governmental agency."

Then it is said, in paragraph 69:

"The following circumstances and conditions led complainant to believe that it should institute, and caused complainant to institute condemnation proceedings against the Louisville & Nashville Railroad Company and against each

railroad company having lines of railroad owned, leased or controlled by the Louisville & Nashville Railroad Company in each of the several states in which such lines of railroad are situate."

The bill then sets out the extensive lines of railroad owned by the Louisville & Nashville Railroad Company on which the Western Union Telegraph Company has telegraph lines in various states. It is then further alleged (section 69g):

"While complainant knew that it could institute proceedings in equity of the nature instituted by it by the petition filed in this cause, to remove the cloud placed by said railroad companies upon its title, and to secure an adjudication of complainant's rights and title and to enable it by judgment in those proceedings, or by judgment or award in ancillary proceedings, to secure title to the easements it needed, if not then possessed by it, complainant knew that much investigation and research would be necessary to enable it to prepare a proceeding of that character and to conduct the litigation which would ensue under it.  *  *  *  The investigation, no matter how diligently pursued or at what expense, would, complainant believed, be unable to disclose all facts pertinent to the ascertainment of the rights of said railroad company and of said complainant; and litigation of the character finally instituted by complainant in this cause, if invoked to protect all telegraph lines, would have to be instituted and pursued in the separate courts having jurisdiction of the territory in which is situate the real estate upon and in which complainant claims easements, interests, and rights for the maintenance and operation of its telegraph lines; such litigation would be exceedingly expensive, and would, complainant believed, be protracted and would cover a long period of time."

The amendment then proceeds:

"Complainant was advised, and believed, that it could, at trivial expense, by condemnation proceedings preserve and secure its easements, rights, and privileges in said land and in said railroad rights of way; that such condemnation proceedings would be speedy and inexpensive; that there was no question but that thereby complainant could protect its rights and easements.  *  *  *  Under the circumstances above mentioned, in the situation then surrounding, with the confronting conditions, and in the belief that the said lines of telegraph, their maintenance and operation, would be seriously interfered with and prevented if some action were not taken which would result in speedy relief and protection, the Western Union Telegraph Company decided upon a general course of procedure applicable to each and to all of said railroad companies, to wit, the institution of condemnation proceedings against each of said railroad companies, as, and for the purposes, above mentioned, including the condemnation proceeding instituted in the state of Georgia against the Louisville & Nashville Railroad Company."  .

It is then alleged (section 70) that:

"After fruitless efforts to reach an amicable agreement with the Louisville & Nashville Railroad Company and its said controlled railroad companies for a new working contract for the exchange of reciprocal service, and after fruitless effort to reach some agreement with the Louisville & Nashville Railroad Company and its said controlled railroad companies whereby its said telegraph lines, easements, rights, and franchises would be secured from molestation or injury and all cloud upon its title thereto removed, complainant reluctantly, under the circumstances and for the purposes above alleged, instituted condemnation proceedings. The laws of the several states in in which said railroads were and are situate imposed, as a necessary condition precedent to the right to institute condemnation proceedings, an effort by complainant to agree with the Louisville & Nashville Railroad Company and each of said other railroad companies upon a compensation to be paid by complainant for the easements, rights, and franchises it desired to preserve, maintain, and secure. Complainant therefore, and under said alleged cir-

243 F.—44

cumstances, offered to pay the Louisville & Nashville Railroad Company and each of said other railroad companies whose lines of railroad were covered by the agreement of June 18, 1884, the sum of five dollars ($5) per mile. Complainant believes that this was an exceedingly liberal offer, and was much more than had often been awarded in condemnation proceedings. Complainant made the offer as liberal as it was, desiring it to be so liberal as to insure, if possible, its acceptance, in order to avoid the expense and annoyance incident to the prosecution of condemnation proceedings, and to avoid litigation with said railroad companies, with which it had long had amicable relations which complainant desired continued and maintained. Much to complainant's regret, said offer made by it to defendant and to said other railroad companies was declined. Thereupon complainant instituted condemnation proceedings against each of said railroad companies in each of the states in which their said railroads were and are situate."

In paragraph 71 it is alleged that notice was served upon the defendant:

"That it proposed and intended to acquire from defendant by condemnation so much of its railroad right of way in the state of Georgia as was and is necessary for its use for the purpose of constructing, maintaining, and operating its lines, of telegraph thereupon and therealong; that the location of the right of way sought to be acquired was and is substantially that location then and now occupied by the telegraph lines of complainant along the railroad of the defendant in Georgia. These lines of railroad and these lines of telegraph and the easements therefor are definitely and fully set forth in said notice. Complainant in said notice named its assessor, and called upon defendant to name its assessor to meet with the assessor so appointed by complainant, and such third assessor as should be legally selected, at the office of the ordinary of Fulton county, Ga., at 1 o'clock p. m. on the 5th day of February, 1912, for the purpose of ascertaining the value of said right of way, interests, and easements set forth in said notice and consequential damages, if any. Complainant is advised that it is unnecessary to attach as an exhibit or to more fully set forth said notice, but it stands ready to attach a copy of said notice, should defendant desire the same and should the court deem it proper.

"Defendant failed and refused to appoint an assessor, and failed and refused to do anything in aid of, or to participate in, the said condemnation proceedings which complainant sought to institute by the said notice served upon defendant."

In paragraph 72 it is alleged that:

"On the 1st day of February, 1912, the defendant the Louisville & Nashville Railroad Company filed its petition in the superior court of Fulton county, to enjoin the condemnation proceeding which complainant sought to institute."

What was decided in this case is shown in the report of the decisions of the Supreme Court of Georgia in Western & Atlantic Railroad Co. v. Western Union Telegraph Co., 138 Ga. 420, 75 S. E. 471, 42 L. R. A. (N. S.) 225, and Louisville & Nashville v. Western Union Telegraph Co. (2 cases), 138 Ga. 432, 75 S. E. 477. After stating the finding in these condemnation proceedings in the state court, the bill then proceeds:

"This decision could not, in advance of its rendition, have been anticipated, and was not anticipated, by your orator. Your orator was greatly surprised by these decisions of the Supreme Court of Georgia, which it thinks were a departure from the former decisions of that court, and particularly the decisions in the cases of S., F. & W. Ry. v. Postal Tel. Co., 112 Ga. 941, 38 S. E. 353; Id., 115 Ga. 554, 42 S. E. 1; Atlantic Coast Line R. R. Co. v. Postal Tel. Co., 120 Ga. 268, 48 S. E. 15, 1 Ann. Cas. 734."

After certain other allegations, not believed to be material here, it is alleged that the decisions of the Supreme Court of Georgia violate paragraphs 1, 2, and 3 of section 3 of article 1 of the Constitution of Georgia of 1877, prohibiting the taking of property without payment of just compensation, forbidding the impairment of the obligations of contracts, and prohibiting the revocation of grants except in such manner as would work no injustice to the grantee, and violate paragraph 1 of section 10 of article 1 of the Constitution of the United States, making illegal a law impairing the obligation of contracts, and violates paragraph 1 of article 14 of the Constitution of the United States, making illegal any law depriving any person of life, liberty, or property without due process of law. It is then alleged that the judgment of the Supreme Court of Georgia was made the judgment of the superior court on August 2, 1912, and that:

"On August 5, 1915, the Louisville & Nashville Railroad Company gave the Western Union Telegraph Company the notice specified in paragraph 26 of its bill of complaint, requiring the removal of all of said telegraph lines from said railroad right of way not later than December 1, 1912, and that, upon failure to remove the same by that time, they would be taken possession of, appropriated, and used or otherwise disposed of by the Louisville & Nashville Railroad Company as its own property."

The amendment then sets out that:

"On or about November 19, 1912, your orator, to protect its properties against the threatened action of the Louisville & Nashville Railroad Company, filed its bill of complaint against the Louisville & Nashville Railroad Company in the United States District Court for the Western District of Kentucky."

The contents of that bill are then set out, and it is stated that the court granted a restraining order, and thereafter granted a temporary injunction, which has been sustained by the United States Circuit Court of Appeals of the Sixth Circuit, which decision is reported in 207 Fed. 1, 124 C. C. A. 573. That the defendant opposed and resisted the relief, restraining order, and injunction sought by the telegraph company from the United States District Court for the Western District of Kentucky, not only resisting the relief prayed in the District Court, but appealing from the order granting relief to the Circuit Court of Appeals for the Sixth Circuit. It is then alleged that:

"After the decision rendered by the Supreme Court of Georgia, reported in 138 Ga. 420, 75 S. E. 471, 42 L. R. A. (N. S.) 225, your orator, on September 13, 1912, moved in the Fulton superior court for a modification of the restraining order granted by it when the judgment of the Supreme Court was made its judgment, and prayed that complainant be permitted to amend its notice of condemnation previously served on the Louisville & Nashville Railroad Company. Thereafter, on November 15, 1912, an order was granted enjoining and restraining the Western Union Telegraph Company from proceeding with its condemnation, and from taking any further steps in said condemnation proceeding for the appointment of an assessor, or for any assessment of the value of the property sought to be condemned; but the order and judgment of the court further provided that 'this judgment is not to be so construed as to prevent defendant from proceeding to condemn in any way in which it is authorized under the law to proceed, other than the proceeding against which injunction was prayed in said petition, without prejudice to defendant amending the present proceeding, if said proceeding can be amended under the law.'

"The Supreme Court of Georgia having held in its decision in S., F. & W. Ry. Co. v. Postal Tel. Co., 115 Ga. 554, 42 S. E. 1, that condemnation proceedings could be amended, the Western Union Telegraph Company, after the said decision had been rendered by the Supreme Court of Georgia as reported in 138 Ga. 420, 75 S. E. 471, 42 L. R. A. (N. S.) 225, and notwithstanding said decisions were not rendered on an appeal from a final decree, but merely on an order refusing to grant an injunction pendente lite, sought to amend its condemnation proceeding above mentioned, and to meet, as far as possible, the alleged necessities and wishes of the Louisville & Nashville Railroad Company by shifting the location of the easement desired to the opposite side of the right of way. A copy of the amendment is attached.

"On December 3, 1912, the Louisville & Nashville Railroad Company amended its petition for injunction, filed in the superior court of Fulton county, Georgia, alleging therein that said condemnation proceedings could not be amended under the law of Georgia, that the description of the easement sought to be condemned in the original condemnation proceeding could not be changed by amendment, and further charging that the Western Union Telegraph Company had no power under its own charter to condemn property in Georgia. * * * The Louisville & Nashville Railroad Company, in its said amendment to its petition, prayed that the Western Union Telegraph Company be enjoined and restrained 'from proceeding in any way with the condemnation sought to be made by it under and by virtue of said attempted amendment to its proceeding to condemn, and also with any proceeding to condemn any of the rights of way of the Louisville & Nashville Railroad Company in the state of Georgia.'

"Upon this amendment a rule was issued by the superior court to show cause, on December 14, 1914, why the prayer of this amendment for injunction should not be granted, restraining and enjoining the Western Union Telegraph Company meantime from proceeding with said condemnation proceeding.

"An answer was filed by the Western Union Telegraph Company to the amendment to said petition, and, at the March term, 1913, of the Fulton superior court, the rule to show cause came on to be heard upon the pleadings above mentioned and documentary evidence and affidavits, no oral evidence being submitted, and the Western Union Telegraph Company not being entitled to, and being afforded no opportunity to, cross-examine witnesses. On the 6th day of September, 1913, a judgment was rendered by the superior court of Fulton county, denying the injunction sought by the original petition of the Louisville & Nashville Railroad Company as amended. At the instance of the Louisville & Nashville Railroad Company, another order further provided that, the Louisville & Nashville Railroad Company desiring to appeal to the Supreme Court of Georgia, the judgment revoking the restraining order and denying the injunction would be superseded for 35 days from September 6, 1913, and, if a bill of exceptions to the Supreme Court should be filed on or before that date, the said judgment would be further superseded until the return of the remittitur in the cause from the Supreme Court to Fulton superior court."

The Louisville & Nashville Railroad Company carried this case to the Supreme Court of Georgia, as shown by the case reported in 142 Ga. 531, 83 S. E. 126, which decision refers to the decision in the case of Nashville, Chattanooga & St. Louis Railroad Co. v. Western Union Telegraph Co., which preceded it, and is reported on page 525 of 142 Ga. (83 S. E. 123). After this decision was rendered, the amendment states the position of the plaintiff in this suit in this way:

"Under the foregoing conditions, and after the rendition by the Supreme Court of Georgia of its decision reported in 138 Ga., and in 142 Ga. above mentioned, your orator, still believing it incumbent upon it to protect its lines of telegraph and to continue the public and governmental service thereby rendered, because of its obligation to the state of Georgia and to the United States and to the public, under the laws of Georgia and of the United States,

and that it was further necessary so to maintain and preserve said lines of telegraph and the continued operation thereof to prevent great loss to itself in the destruction of its telegraph lines and properties, and to protect itself from innumerable suits for damages and for penalties, to which it would be subjected if said lines of telegraph were destroyed, or their continued operation prevented or interfered with, and, finding that condemnation proceedings under the statutes of Georgia were inadequate to afford it proper relief, was informed and advised by its counsel, and believes, that it was and is entitled to file in this court the petition heretofore filed in this cause, and is now entitled to file this amendment thereto, and is entitled to the relief prayed in the said original bill and herein.

"Your orator, on the 5th day of April, 1915, dismissed its condemnation proceedings against the defendant, and dismissed its other condemnation proceedings in Georgia against the several railroad corporations having or operating lines of railroad in the state of Georgia under the control of, or leased, defendant, and thereafter your orator filed in this court its petition or bill of complaint, to which this amendment is now offered."

The amendment then says:

"It is alleged that the decisions of the Supreme Court of Georgia above mentioned, reported in 138 Ga. and 142 Ga., and particularly the decision of the Supreme Court in the equity case brought in Fulton superior court against your orator, are decisions upon interlocutory injunctions, and are not decisions upon final decree; that said equity cause and the other equity causes instituted against your orator in Fulton superior court by the several railroad companies controlled by defendant are still pending and standing in Fulton superior court for hearing upon their merits.

"In view of the dismissal of said condemnation proceedings and of the institution of this suit, it is improbable that said suits instituted in Fulton superior court against complainant to prevent it from instituting and prosecuting condemnation proceedings will be further pressed or heard until the adjudication by this court of the issues herein raised, and until decree shall have been rendered in this cause determining complainant's rights."

The question here is whether or not the institution of these condemnation proceedings in the state court, and the effort to sustain the same, and the difficulties these proceedings encountered in the courts, are a sufficient reason to authorize the plaintiff's proceeding here with its effort to condemn the right to use the rights of way of the railroad company for its poles and wires. What was said by this court in the Atlanta & West Point Railroad Company Case, 227 Fed. 465, is controlling in this matter, and that was (speaking of the right to condemn in equity):

"This question was presented to the Circuit Court of Appeals for the Sixth Circuit, in Western Union Telegraph Co. v. Ann Arbor R. Co., 90 Fed. 379, 33 C. C. A. 113. That court, through Circuit Judge Taft, said, after quoting from Pensacola Tel. Co. v. W. U. Tel. Co.: 'The authority establishes, if authority were needed, that the telegraph company cannot occupy the line of defendant's railroad without the consent of defendant, or the consent of some predecessor in title, which is binding on the defendant. This, we have seen, is wanting. The suggestion, however, seems to be, if we understand it, that, because of the public necessities, the court ought to use its injunction process and shape its decree so as to effect an equitable condemnation of the easement of way. The court has no such power.'"

The Circuit Court of Appeals, speaking of this matter, in Western Union Telegraph Co. v. Louisville & Nashville R. Co., 238 Fed. 26, said this:

"If in any case where the relations of the parties are such as are shown to have existed between the plaintiff and the defendant, it is competent for a court of equity, upon full and adequate compensation being made, to protect from disturbance such possession as the plaintiff has, and, in the suit in which this is done, make complete and final disposition of the entire controversy arising out of the situation and the relations of the parties (see New York City v. Pine, 185 U. S. 93, 22 Sup. Ct. 592, 46 L. Ed. 820, and Western Union Telegraph Co. v. Ann Arbor R. Co., 90 Fed. 379, 33 C. C. A. 113), the facts averred in the bill in the pending case fall short of showing that it is such a one. It well may be inferred from the averments of the bill, and its lack of averments, that, if the plaintiff had exercised any diligence at all, it could, long before the bill was filed, have acquired by legal proceedings available to it the required rights and easements in the defendant's properties which it has continued to occupy and use after all rights it had therein had ceased to exist. Equitable remedies are not open to a party where the occasion or necessity of his resort thereto is attributable to his own unexplained failure diligently to pursue complete and adequate legal remedies available to him."

The first headnote of the decision of the Supreme Court of Georgia, in Western & Atlantic Railroad Co. v. Western Union Telegraph Co., 138 Ga. 420, 75 S. E. 471, 42 L. R. A. (N. S.) 225, is as follows:

"A telegraph company may condemn a right of way on and along the right of way of a railroad company, when the proposed line of telegraph will be so constructed as to produce no material interference with the railroad company's free exercise of its franchise or with the actual operation of the railroad."

In the case in 142 Ga. 525, 531, 83 S. E. 126, it is simply held, as I understand it, that a condemnation proceeding is not amendable, and that an amendment that sets out a new cause of action cannot be allowed. I do not see how this amendment to the bill gives the plaintiff a cause of action in a court of equity, if it had none before. I do not think this amendment sets out any cause of action against the defendant as to that part of the railroad not covered in its favor by the decision of the Circuit Court of Appeals. The motion to dismiss will be sustained.

The defendant may have until September 1, 1917, to file any answer that may be necessary to that part of the plaintiff's bill upheld in the decision of the Circuit Court of Appeals.