59324. CITY OF ATLANTA v. FIRST NATIONAL BANK OF ATLANTA et al.

DEEN, Chief Judge.

This appeal represents the second condemnation by the City of Atlanta in its action to acquire land on behalf of MARTA (Metropolitan Atlanta Rapid Transit Authority) for use in its construction of an Atlanta Arts Center station on its northern line. The original plans of July, 1978, left intact a 15-apartment structure at the corner of Fifteenth Street and Lombardy Way, provided for all-day parking and in addition for an area designated as "kiss-ride" where passengers could be let off or picked up by automobiles which then continue to other destinations. In the original plan the kiss-ride facility, to contain 31 spaces, was located just north of Sixteenth Street, the latter deadending into land used for the facility. This plan called for destruction of a low retaining wall and enlargement of the sloping area involved by a larger wall ten feet in height.

It was thereafter decided by the MARTA engineers that the kiss-ride parking area should be moved to the corner now occupied by the trust property here involved, which would permit landscaping the slope instead of building a higher retaining wall, make slight changes in the approaches for MARTA buses, reduce the temporary parking from 31 to 29 spaces, etc. The additional retaining wall height would furnish about the same kiss-ride space and is feasible by raising the wall to a maximum height of 20 feet instead of 10, the additional cost to be approximately $200,000 by the highest estimate. The cost of the property now sought to be acquired (which would eliminate raising the height of the wall) is variously estimated between $200,000 and $400,000. It therefore appears that the same facilities can be provided by MARTA utilizing the land already taken at no greater expenditure than the acquisition of the property here involved. The engineer and project manager for the condemnor, however, offered considerable testimony to the effect that the additional land would represent some improvement in the flow of traffic and like considerations. As to the apartment complex

involved, it appears undisputed that the structure is of good architectural appearance and sound condition and blends well into the adjacent residential area. These figures do not include either the cost of demolition of the apartment complex if this parcel is condemned, or the cost of restructuring the area already acquired by means of retaining wall to utilize approximately the same area according to the original plan as modified to accommodate four additional bus bays.

A special master heard the condemnation proceedings initiated under Code Chapter 36-6A. His summary reflects the major areas of disagreement between the parties as to the public necessity of adding additional property to that already acquired for the same purpose. The special master summed up the questions as follows: "As reflected by the testimony of Mr. Medley [the project manager for MARTA] the various factors taken into consideration in making the determination to abandon the use of the previously acquired property in favor of the subject property were: 1. The increase in width of the bus facility; 2. the dead-end situation at the section parking area; 3. the cost of the wall, and 4. straightening of the bus way drive." After analyzing these problems in detail the special master reached the conclusion that: "Under the evidence presented, the inescapable conclusion is that the property previously acquired by MARTA for the development of its 'kiss-ride' facility at the Art Center Station was adequate for the proposed purpose and that through the instant action the City of Atlanta, for the benefit of MARTA, is making an effort to take more land than is reasonably necessary for the accomplishment of the public purpose and that the reasons given for abandoning the previously acquired property in favor of the condemnation of the subject property are arbitrary, capricious and indicative of bad faith." This conclusion was appealed to and upheld by the judge of the Superior Court of Fulton County.

Close examination of the testimony and accompanying maps provided for the acquisition of the original land as well as the subsequent desired enlargement lead to the inescapable conclusion that, construed as a whole in favor of the judgment entered, the original taking was sufficient to meet the needs perceived by the MARTA Board and its engineers and other staff. The question then becomes one of law: Where both the original and present overall plans offered by MARTA appear to be adequate for the purposes intended, may the owner of property sought to be additionally condemned resist on the ground that the additional taking is arbitrary, capricious, and not reasonably necessary? "The taking of more land than is necessary for public purposes cannot be justified

on the principles underlying the right of eminent domain. When more land is taken than is necessary for public uses, it is in effect a taking for private use, or for no use; in either of which instances the right does not exist." *Piedmont Cotton Mills v. Ga. R. &c. Co.,* 131 Ga. 129, 136 (62 SE 52) (1908). Under conflicting evidence in eminent domain cases, as in others, a trial judge has the right to believe the party to whom the evidence preponderates in determining whether or not the taking is reasonably necessary. *Barrett v. State Hwy. Dept.,* 211 Ga. 876 (89 SE2d 652) (1955). It has many times been stated that in the absence of bad faith the exercise of the right of eminent domain rests largely in the discretion of the authority exercising such right, both as to necessity and amount. Cf. *City of Atlanta v. Heirs of Champion,* 244 Ga. 620 (261 SE2d 343) (1979), which latter case also holds: "Even though the evidence regarding necessity [for the taking] may have been in conflict, the trial judge was authorized to determine the factual issues in the case. These findings should not be disturbed on appeal if there is evidence to support them." Thus, necessity may become a factual issue. Further, the presumption in favor of the correctness of the condemnor's determination is greatly weakened, if not destroyed, by the fact that MARTA in 1978 specifically decided *not* to condemn the property in question and in fact prepared working specifications placing the parking facility within the area taken, and its engineer now admits that those plans allow (or, with the raising of the retaining wall can allow) for most of the improvements desired plus the same or an additional number of bus bays and parking spaces. Further, it appears from the maps that if the temporary parking facility is switched over to land cleared by removal of the apartment complex, the land originally condemned which was allocated to this purpose will be left unused for all practical purposes, in itself an obvious waste of funds.

There was evidence substantially supporting, if not preponderating, to the decision of the special master, affirmed by the superior court, that the additional taking of the property here involved is not reasonably necessary, from which it follows that such taking would be arbitrary and capricious. After examination of the entire record, we concur in the result reached.

*Judgment affirmed. Quillian, P. J., McMurray, P. J., Smith, Shulman, Banke, Birdsong and Carley, JJ., concur. Sognier, J., dissents.*

ARGUED FEBRUARY 6, 1980 — DECIDED MAY 19, 1980 —

*Ferrin Y. Mathews, Charles N. Pursley, Jr.,* for appellant.
*Charles E. Watkins, Jr., Jefferson D. Kirby, III,* for appellees.

SOGNIER, Judge, dissenting.

I respectfully dissent from the ruling of the majority. Code Ann. § 36-603a provides that an authorized condemning body shall be the exclusive judge of the public need of property to be acquired and the amount of property to be acquired for the public purpose. *Zuber Lumber Co. v. City of Atlanta,* 237 Ga. 358 (227 SE2d 362) (1976). The question of whether there is a necessity for the taking of the property is a matter of legislative discretion for the condemning body to determine which will not be interfered with or controlled unless the authority acts in bad faith or beyond the powers conferred upon it by law. *Miles v. Brown,* 223 Ga. 557 (156 SE2d 898) (1967). In the absence of bad faith, the exercise of the right of eminent domain rests largely in the discretion of the authority exercising such right, as to the necessity and what and how much land shall be taken. *King v. City of McCaysville,* 198 Ga. 829 (33 SE2d 99) (1945); *Kellett v. Fulton County,* 215 Ga. 551 (111 SE2d 364) (1959); *City of Atlanta v. Heirs of Champion,* 244 Ga. 620 (261 SE2d 343) (1979).

In this case MARTA had one parcel of land earlier acquired for the location of a parking facility. Upon the recommendation of the project manager of MARTA, a professional engineer, MARTA adopted a resolution approving the acquisition by condemnation of the subject property. Upon hearing before the special master, the project manager testified to the reasons for deciding to use the subject property rather than the property acquired earlier. The new site would allow 12 bus bays rather than 8, eliminate a dead end section in the parking lot and avoid the cost of a retaining wall necessary on the first proposed site. On cross examination of this witness the cost of the retaining wall was challenged as well as the reasons for the changed location. Nevertheless, no contradicting testimony was ever introduced. The special master fairly sets forth these factors supporting the acquisition by condemnation in his findings of fact.

The special master concluded that as a matter of law, the property acquired previously was adequate for the proposed purpose, that MARTA was taking more land than was reasonably necessary for the public purpose and the reasons given for abandoning the earlier property were arbitrary and capricious and thus indicative of bad faith. The special master and the trial judge have substituted their judgment for that of the condemning authority (MARTA). After a review of the record, I find that the award is not based on the evidence but rather on speculation.

Our courts, both trial and appellate should ever be conscious of the principle of the separation of powers and should refrain from interference with the legislative discretion of the condemning authority to make decisions as to the feasibility of proposed governmental facilities. *Savannah F. & W. Co. v. Postal Tel. Co.,* 115 Ga. 554, 560 (42 SE 1) (1902). Unless there is a clear abuse of authority, i.e. "bad faith," such decisions should not be overturned. The good judgment or bad judgment of the condemning authority is not subject to this court's review unless the condemning authority be proceeding in bad faith. Bad faith, in the context of matters of judgment and discretion, is not simply bad judgment or negligence, but it imports a dishonest purpose or some moral obliquity, and implies conscious doing of wrong, and means breach of known duty through some motive of interest or ill will. *Vickers v. Motte,* 109 Ga. App. 615, 620 (137 SE2d 77) (1964). While we may disagree with a decision of a governing body, nevertheless we must not substitute our judgment for theirs.

My colleagues cite *Piedmont Mills v. Ga. R. &c. Co.,* 131 Ga. 129 (62 SE 52) (1908) as authority for the right of the trial judge to determine necessity where property is to be condemned. With this I have no quarrel, but it is not license to substitute the court's judgment, absent bad faith, for that of the governing authority. The *Piedmont Mills* court, reflecting on the word "necessary," states that "[W]e do not mean to say that the company is limited to the amount that is *absolutely* necessary, but it is limited to the amount that is *reasonably* necessary under all the facts and circumstances regarding the particular matter under consideration. The word 'necessary' is not meant to be used in the sense of 'indispensable.' Necessity for public use is not such an imperative necessity that would render the construction and operation of a railroad impossible without the amount of land in question." *Piedmont Mills,* supra, p. 136. (Emphasis supplied.)

I agree with my colleagues that *Heirs of Champion,* supra, stands for the proposition that bad faith must be shown to overturn the condemning authority's discretion. However, the majority rely heavily on the holding in *Heirs of Champion* that if any evidence supports the findings of the trial court, then this court should not disturb the lower court's finding. I agree entirely with this principle of law, but in the instant case there is an *absence* of facts upon which the conclusion as to bad faith is based. I recognize that *Piedmont Mills,* supra, holds that lack of necessity can be evidence of bad faith; however, in the instant case there is an uncontroverted showing of necessity by MARTA which is cited by the special master in his findings of fact. Hence, I fail to see how such evidence establishes

bad faith on the part of the condemning authority.

The special master also found that the Board of Directors of MARTA exercised no independent discretion in reaching their determination that the acquisition of the subject property was necessary. This was apparently based on the fact that MARTA followed the recommendation of its project engineer. If, however, this were a determining factor with regard to the exercise of the Board of Directors' discretion, we would, in effect, bar such Board of Directors from basing their decisions on the recommendation of experts; an unhealthy result. Accordingly, I would reverse the holding of the superior court, which affirmed the findings of the special master.