TINSLEY v. RICE et al.　RICE v. TINSLEY.

| 105 | 285 |
| 126 | 831 |
| 126 | 833 |

1. The protection afforded to a plaintiff under the doctrine that lis pendens is notice to all the world, may be lost by a failure on his part to prosecute his action with due diligence.

2. Under this rule, the auditor in the present case, in any view of the evidence introduced before him was right in finding and reporting that the plaintiff's claim of title to the premises in dispute, even if good when his petition was originally filed, was, so far as the main defendant in error is concerned, rendered invalid against her by his own laches and long delay in bringing his action to trial, and that as against him the title of this defendant in error to the land in dispute was good.

Argued June 15, — Decided July 26, 1898.

Exceptions to auditor's report.　Before Judge Fite.　Bartow superior court.　July term, 1897.

Thomas W. Milner and J. W. Harris, for plaintiff.

James M. Neel and John W. Akin, for defendant.

LITTLE, J.　The plaintiff in error filed his bill against John A. Crawford, Mrs. Elizabeth Barna, and John Underwood, in the superior court of Bartow county, in the year 1867.　The subject-matter of the bill was the title to lot of land No. 544 in the 17th district, 3d section of Bartow county, to which complainant claimed title by virtue of a conveyance from Mrs. Barna.　The prayer of the bill was, that as the defendants, who formerly owned the legal and equitable title to the lot, had received and used the purchase-money paid to them by complainant, the court decree to the complainant a good and sufficient title to the lot, and that the defendants be required to pay rents for the land while complainant was deprived of possession by them, and that defendants be required to deliver to complainant possession of the lot; that if legal title was found to exist in the estate of George W. Underwood, of which John A. Crawford was administrator and the other defendants heirs at law, the estate be divided, the lot of land be assigned to Mrs. Barna, and she hold the same in trust for complainant, and she be decreed to deliver possession to complainant in accordance with the deed theretofore made by her; that the defendants be enjoined from taking the rents and profits of the land, but that the

same be paid over to some person to be appointed by the court to receive them. The defendants answered this bill in October, 1867. The injunction was granted as prayed for. Crawford, one of the defendants, died in April or May, 1875, and B. O. Crawford was soon thereafter appointed administrator of his estate. Elizabeth Barna died testate in 1876, and her son B. A. Barna qualified as executor. The death of John Underwood appears to have occurred in 1873, and Thomas A. Milam was appointed administrator on his estate in 1877. The record further discloses that no proceedings were had under the bill and answer until February 7, 1890, when, on application of complainant, James T. and Ada S. Rice were made parties. On the 14th of January, 1892, T. J. Milam, administrator of John Underwood, was made a party defendant. On the same date, Barna, executor of Barna, was also made a party defendant. It is not shown that Crawford's administrator has ever been made a party. After James T. and Ada S. Rice were made parties, the defendant Ada S. Rice answered, claimed title to the land by prescription, and that she and those under whom she claimed held open, notorious, continuous, and peaceable possession of the land for more than twenty years before she was made party in said suit. The case, by order of the court, was referred to an auditor in February, 1896; and he made a report, in which, among other things, is included the following: "On the first of June, 1881, the sheriff of Bartow county levied a fi. fa. of Hardwick *v.* Wofford and others, and other fi. fas. against W. T. Wofford, on the lot of land in dispute. At that time Wofford was in possession, claiming it was his own. It was levied on as the property of Wofford, and after being duly advertised, was sold in April, 1882, to L. E. and H. L. Wofford, to whom the sheriff made a deed, under which they went into immediate possession; that L. E. and H. L. Wofford were bona fide purchasers, and on the 16th of June, 1883, they conveyed the same to Ada S. Rice, having in September, 1882, made to her a bond for titles, under which Mrs. Rice went into possession and remained until the 7th of February, 1890, when she was made a party defendant to the bill; that L. E. and H. L. Wofford were in peaceable possession of the land from the time they purchased.

it up to the time of the sale to Mrs. Rice," etc. The auditor decided that title in Mrs. Rice was good against the complainant; that a decree should be taken in favor of the defendants and against the complainant. To the auditor's report both the complainant and Mrs. Rice, respectively, filed exceptions of law and fact, which the court overruled and directed the jury to render a verdict finding in favor of the defendants, and a decree was entered on the verdict in accordance therewith. The plaintiff in error excepted, alleging that the court erred in disallowing his exceptions to the auditor's report, in directing a verdict and in rendering the decree. From the view which we take of the case, it is not necessary to review in detail all the exceptions of fact filed by the complainant to the auditor's report. We have very carefully considered all of the exceptions made, and examined the evidence reported by the auditor on which his findings are based; but confining ourselves to such as we consider to be controlling questions in the case, we omit any discussion as to the others.

1. The fourth, fifth, and sixth exceptions of law filed by the plaintiff in error raise the question as to whether the pendency of the bill filed by the plaintiff in error charged the defendant Rice with notice of the claim of title to the lot of land in question at the time she purchased, received a conveyance, and entered into possession of the same. The original bill, asserting the title to be in the complainant, was filed in July, 1867, and was ancillary to a statutory action to recover possession of the land, filed by the complainant on the 20th of February, 1866. The date of the deed executed by the sheriff conveying the interest of W. T. Wofford in the land to L. E. and H. L. Wofford was in April, 1882, while the date of the deed from the latter to Mrs. Rice was June 16, 1883, Mrs. Rice being then in possession under a bond for titles executed in September, 1882. The question, therefore, presented is, whether the pendency of the action to recover possession of the lot of land and the ancillary bill filed by the complainant charged L. E. and H. L. Wofford and Mrs. Rice with notice of the complainant's claim of title. Section 3936 of the Civil Code declares, that a pending suit is a general notice of an equity or claim to all the world,

from the time the petition is filed and docketed. Lis pendens, which is defined to be the jurisdiction, power, or control which the court acquires over the property involved in the suit pending the continuance of the action and until its final judgment therein, has for its object the keeping of the subject, or res, within the power of the court until the judgment or decree shall be entered, and thus to make it possible for courts of justice to give effect to their judgments and decrees. 13 Am. & Eng. Enc. L. 869, 870, and authorities cited. In order that there may be an effective lis pendens, the property involved must be of a character to be subject to the rule; the court must have jurisdiction both of the person and the res; and the property involved must be sufficiently described in the pleadings. Bennett on Lis Pendens, 153. Notice by lis pendens is said to commence at the point of time at which the court first acquires jurisdiction and to terminate at the point of time at which the court ceases to have full jurisdiction. 13 Am. & Eng. Enc. L. 883. But while our code declares that a pending suit is a general notice of an equity or claim, it does not provide in all cases that one who purchases property involved in such suit is necessarily affected by the decree rendered therein. The provision (§3936, supra) is, that if such pending suit is duly prosecuted and is not collusive, one who purchases pending the suit is affected by the decree rendered therein. In order, therefore, to charge a purchaser with notice under the law of lis pendens, it is necessary to inquire what legal effect should be given to the words "duly prosecuted" which we find in the statute. The rule laid down is, that, for the lis pendens to retain its vitality and binding force against innocent pendente lite purchasers it is essential that there shall have been a "full prosecution" of the cause from the commencement to the final termination thereof. In order that there may be said to have been a full prosecution of the suit, it must appear that there has been no such negligent "intermission" as may appear to be inexcusable, and which can not be satisfactorily explained. 13 Am. & Eng. Enc. L. 889. The rule that a purchaser pendente lite of the subject of the litigation, if he buys in good faith and without actual notice of the claims of the litigants, is not affected by the pending suit unless

MARCH TERM, 1898.

the suit has been prosecuted with due diligence, was first formulated by Lord Bacon, and is stated by him in the following language: "No decree bindeth any that cometh in bona fide by conveyance from the defendant before the bill exhibited and is made no party, neither by bill nor order; but where he comes in pendente lite, and while the suit is in full prosecution, and without any color of allowance or privity of the court, there regularly the decree bindeth; but if there were any intermission of suit, or the court made acquainted with the conveyance, the court is to give order upon the special matter according to justice." Ordinance 12 in Chancery, 15 Bacon's Works, 353. It is uniformly held, that in order that a purchaser pendente lite may be affected by the lis pendens, the suit must be prosecuted in good faith, with all reasonable diligence, and without unnecessary delay; and that the question of reasonable diligence in prosecuting the suit must depend upon the circumstances of each case. 2 Pomeroy's Eq. Jur. § 634; 1 Freeman on Judgments, § 202; Wade on Notice, § 359; Bennett on Lis Pendens, §§ 100½ et seq. It is likewise held that a continuous or full prosecution does not require that the suit be brought to a close within any limited time, or that given steps shall be taken in the course of the prosecution of the cause within any limited period; but that the rule simply contemplates that the suit shall be prosecuted without such negligent intermission as may be shown to be inexcusable, or as shall not be satisfactorily explained—a reasonable excuse for delay being always available to keep the lis pendens in life. Bennett on Lis Pendens, §§ 100½, 101; 13 Am. & Eng. Enc. L. 889. While it is true that the question as to whether or not an intermission of prosecution has occurred, which shall be fatal to the continuity of the lis pendens, depends upon the facts of each case, it has been well said that it will not do to concede to the courts the discretion, in passing collaterally upon the validity of judgments and decrees about which there is a contention in respect to whether or not lis pendens was or was not lost for want of full prosecution, to determine such question independently of some rule of decision, as such a course would be exceedingly dangerous. The ground upon which to place the invalidity of lis pendens for a failure

to take action in pending suits, for want of full prosecution, is not, as in many cases seems to be supposed, negligence merely as such, but estoppel as warranted by such negligence and other conduct on the part of those seeking the enforcement of lis pendens. Were the invalidity of lis pendens based upon the ground of negligence alone, power would be left in the courts to say in each instance what is and what is not such negligence as should invalidate lis pendens. It would thus in effect make it a question the decision of which would rest in the discretion of the court. If the principle of estoppel is applied to such cases, the court will have for a rule of decision the established doctrines of the law of estoppel. In order to constitute estoppel by conduct, there must concur, first, a false representation or concealment of facts; second, it must be within the knowledge of the party making the one or concealing the other; third, the person affected thereby must be ignorant of the truth; fourth, the person seeking to influence the conduct of the other must act intentionally for that purpose; and, fifth, persons complaining shall have been induced to act by reason of such conduct of the other. In passing upon this question of negligent prosecutions, the court may well, in applying these elements, assume it to be the duty of every complainant to make full prosecution of suits, and that third parties have a right to expect and believe that such diligence has been used; and, in the absence of information to the contrary, treat the fact of non-prosecution of suits as fraudulent concealment on the part of plaintiffs, with their knowledge and intention. Bennett on Lis Pendens, § 109, citing Bigelow on Estoppel, 480; 13 Am. & Eng. Enc. L. 890, 891. In the case of Petree *v*. Bill, 2 Bush, 62, it was held, that a delay of two years without a step taken in the case, or a motion made indicating an intention to prosecute the suit, in the absence of any excuse or satisfactory reason for the delay, is such gross and culpable negligence as to destroy the force of the lis pendens. In the case of Bybee *v*. Summers, 4 Ore. 361, it is said that to give effect to lis pendens the suit should be prosecuted with such diligence as to give the proceedings some degree of notoriety, and that a delay of five years to prosecute a suit was such unreasonable delay as to invalidate lis pendens.

In the case of Mann v. Roberts, 11 Lea, 57, a delay of five years was held to invalidate the lis pendens. In the case of Erhman v. Kendrick, 1 Met. (Ky.) 146, suit was brought in 1852 to enforce a mechanic's lien, which was ready for hearing in 1853. In 1856 the lien debtor mortgaged the property. In 1857 when the mortgage was sought to be foreclosed, the holder of the mechanic's lien claimed priority. It was held that this priority was lost because no action had been taken to enforce it for four years. In the case of Fox v. Reeder, 28 Ohio St. 181, where a bill was filed in 1842 to foreclose a mortgage, the case went to a decree, was referred to the master to report, and an order of sale was made, but no step was taken in the case for twenty-seven years, when the suit was dismissed for want of prosecution and reinstated. The purchaser had been in possession under his purchase, holding adversely for twenty-one years, and had made valuable improvements. It was held that the lis pendens could not avail. So too in the case of Gossom v. Donaldson, 18 B. Mon. 237, where a like ruling was made, it appeared that the purchaser went into adverse possession after final decree, had continued there more than twenty years, and had made valuable improvements. A like ruling was made in the case of Kinsman v. Kinsman, 1 Rus. & M. 617, where it appeared that a decree, which was substantially final, had been rendered, but some act remained to be done to carry it into execution. No attempt was made to execute the decree for more than twenty-seven years, during which time the purchasers held adverse possession and had erected valuable improvements.

2. It would seem from what has been said, that if one who purchases pending the suit is not to be affected by constructive notice under the law of lis pendens, unless the suit be duly prosecuted, then the finding of the auditor was correct in this case. As shown above, the original defendants all died within a few years after the institution of the original action—Crawford in 1875, Mrs. Barna in 1876, and John Underwood before the year 1887. The representative of Crawford has never yet been made a party. The executor of Barna was not made a party until 1892, sixteen years after her decease. It is true that Mrs. Rice was made a party in 1890, but from 1876 to 1890 two

proper parties had not been made. It is difficult to assign this delay to any other cause than the laches of the plaintiff in error. The representatives of the deceased defendants had all been promptly appointed, and nothing was required upon the part of the plaintiff to speed his suit except to make parties. If there is a case which may not be said to have been duly prose-cuted, this is the case; and unless it was duly prosecuted, the de-fendant Mrs. Rice was protected in her purchase from the con-structive notice of lis pendens. It may be stated, however, that the delay was subject to explanation; but the only attempt in the way of explanation which we find in the record is in the evidence of the plaintiff himself, who says: "I have tried almost every court to get my case up for trial. I had every counsel in the case who came into it after it was brought. Judge James Milner was one; also Judge Dawson A. Walker; also the present Judge Mil-ner, and Cols. Wat Harris and Warren Akin. I have tried all the time to get a trial of the case. I commenced the case in 1864 and employed first Judge James Milner, then Gen. Wof-ford. John W. Wofford was also my lawyer. He left here in 1877. I do not know when Gen. Wofford quit being my lawyer. I do not know what he quit for. I had no falling out with him. He may have quit being my lawyer because he thought there was no money in it. I paid him nothing. Gen. Wofford quit the case. I did not rely on him after he quit the case. I got Judge Parrott next, who represented me until he went on the bench. The present Judge Milner took Parrott's place, and represented me until he went on the bench. Since then, Akin and Harris took his place. Judge Walker came into the case after Judge Parrott went on the bench, and represented me until his death, which was three or four years. I urged my lawyers all the time to have parties made to the case so that it could be tried. Don't know what my lawyers did in the matter." In no view could this explanation be a satisfactory account of the delay. Some-thing over thirty years elapsed from the time the complainant says he commenced his case until the trial, and during a greater portion of this time the case was without parties, owing to the laches of the plaintiff. It will not answer for him to say that he did not know what his attorneys did in the matter. It was his

business to know and his business to have his case prepared for trial. It was incumbent on him to see that his attorneys gave the case proper attention, and if he permitted them to neglect it, he can not claim rights which are only given to the diligent who duly prosecute their cases when they voluntarily bring them into the court; and we are constrained to hold, that so far as it is contended that the defendant Rice was affected at the time she obtained a conveyance to the land with actual notice of the claim of title by the plaintiff in this case, that contention must fall, and the defendant Rice must also be held unaffected with constructive notice of the pending suit. There was no error in refusing to approve the exceptions of fact, nor in refusing to sustain the exceptions of law filed by the plaintiff in error.

*Judgment on main bill of exceptions affirmed. Cross-bill dismissed. All the Justices concurring.*