## HARROLD *et al.* v. CENTRAL OF GEORGIA RAILWAY CO.

1. A lessee of a railroad company can not exercise the power of eminent domain, conferred by the legislature on the lessor, without legislative authority for that purpose.

(a) Whether or not the Central of Georgia Railway Company, by reason of its purchase of the properties of the Savannah & Western Railroad Company (which in turn had either purchased the line of the Buena Vista & Ellaville Railroad Company, or had consolidated with that company), acquired such right of eminent domain as the Buena Vista & Ellaville Railroad Company formerly had, the evidence in the present case shows that the line of the last-named railroad company terminated at a point about two miles northward from Americus, that it had no

line through Americus, and that the Central of Georgia Railway Company owned no line of road through that city adjacent or contiguous to the street involved in this litigation or intersecting it, but that the last-mentioned company operated the line of the Southwestern Railroad Company, which extended into or through the city of Americus, under a lease. Accordingly, the Central of Georgia Railway Company had no right, by virtue of its ownership of the old Buena Vista & Ellaville Railroad, to exercise the right of eminent domain, so as to condemn the rights of owners of property abutting on a street in Americus, and owning the fee in a portion thereof, subject to the public easement, with a view to laying a track longitudinally upon a portion of such street.

2. The decision in *Harrold* v. *Mayor etc. of Americus*, 142 *Ga.* 686 (83 S. E. 534), is not conclusive in this case, as to the points above ruled. That case arose under an application for an interlocutory injunction to restrain the Central of Georgia Railway Company from laying and using a track longitudinally in the street above referred to, the right being claimed by virtue of an amendment to the charter of Americus and an ordinance passed by the municipal authorities thereof. It was held that this could not be done without compliance with the constitutional provision prohibiting the taking or damaging of property for public purposes without just and adequate compensation being first paid. No effort was then being made to exercise the right of eminent domain, and the decision in that case, based on the judgment rendered at the interlocutory hearing, did not adjudicate the power of the Central of Georgia Railway Company to exercise such right with respect to the street in question, or the regularity of proceedings which might thereafter be commenced for that purpose.

3. In condemnation proceedings under the statute regulating the exercise of the right of eminent domain by a railroad company, the assessors can only determine the amount of compensation to be paid, and can not pass upon the legal power of the company to institute such proceedings; nor, on appeal from the award of the assessors, can the issue be so broadened as to raise that question. If an illegal effort is made to exercise such a power, the landowner may apply to a court having equitable jurisdiction for an injunction against such proceeding.

October 13, 1915.

Petition for injunction. Before Judge Littlejohn. Sumter superior court. March 12, 1915.

*W. P. Wallis,* for plaintiffs.

*E. A. Hawkins* and *J. B. Hudson,* for defendant.

LUMPKIN, J. After the passage of the act of August 5, 1913 (Acts 1913, p. 490), amending the charter of the City of Americus, and an ordinance passed by the municipal council, the Central of Georgia Railway Company was about to lay a track for some distance along Hampton street, in that city, when Harrold Brothers, a firm composed of Thomas Harrold and Frank P. Harrold,

who owned lands abutting on the street, and claimed title to a part thereof subject to the public easement, filed their equitable petition to enjoin the construction and use of such track. Mrs. McGillis was made a party plaintiff. On the hearing of the application for an interlocutory injunction, the presiding judge enjoined the laying of the track in the street until compliance with the constitutional provision which declares that private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid. The case was brought to this court, and the judgment was affirmed. *Harrold* v. *Mayor etc. of Americus,* 142 *Ga.* 686 (83 S. E. 534). Thereafter a proceeding was instituted to condemn the rights of Thomas Harrold and Frank P. Harrold as owners of property abutting upon the street, and to assess damages. The two Harrolds filed their equitable petition to enjoin the condemnation proceeding, on numerous grounds. On the hearing of the application for the interlocutory injunction it was refused, and the plaintiffs excepted.

1. It appeared from the allegations in the petition admitted by the answer, and from the undisputed evidence, that the Central of Georgia Railway Company did not own a line of railroad adjacent to Hampton street. It was also alleged that the defendant had no charter power to own or construct a railroad through the city of Americus, or the county of Sumter; and the paragraph of the petition containing this allegation was admitted. It also appeared, that the defendant as lessee of the Southwestern Railroad Company operated the line of that company, which runs nearby Hampton street; that the Buena Vista & Ellaville Railroad Company, which had the right of eminent domain, constructed a line of railroad having its terminus in Sumter county, and intersecting the Southwestern Railroad at a point about two miles north of the corporate limits of Americus, and running thence in a northwesterly direction through the town of Ellaville to Columbus, Georgia; that the Savannah & Western Railroad Company obtained the line of the Buena Vista & Ellaville Railroad Company by private purchase, or by consolidation; and that the property of the Savannah &-Western Railroad Company was later sold under a decree of the United States court, and purchased by a committee, who conveyed it to the Central of Georgia Railway Company.

So far as this record shows, the power of the Central of Georgia

Railway Company to exercise the right of eminent domain with respect to Hampton street and owners of property abutting thereon, must either depend upon its being the lessee of the Southwestern Railroad, or must be claimed by virtue of becoming the owner of the line of the Buena Vista & Ellaville Railroad Company. In 1 Lewis on Eminent Domain (3d ed.), § 376, it is said: "When authority to take property by virtue of the power of eminent domain is conferred by the legislature, it becomes a personal trust, and can not be delegated or transferred, except by legislative sanction." A lessee of a corporation can not exercise the power of eminent domain, conferred by the legislature on the lessor, without legislative authority for that purpose. Western Union Tel. Co. *v.* Pennsylvania R. Co., 195 U. S. 594 (25 Sup. Ct. 150, 49 L. ed. 332, 1 Ann. Cas. 533); 2 Elliott on Railroads (2d ed.), § 958; State ex rel. Trimble *v.* Superior Court, 31 Wash. 445 (72 Pac. 89, 66 L. R. A. 897). Accordingly, by virtue of being the lessee of the Southwestern Railroad Company, the Central of Georgia Railway Company acquired no authority to exercise the right of eminent domain, although the lessor might have been clothed with that power.

It appears in the record that the properties of the Savannah & Western Railroad Company were sold at a judicial sale, and passed to the Central of Georgia Railway Company; and that the latter company had been organized and chartered by purchasers at a judicial sale of the properties and rights of the Central Railroad and Banking Company of Georgia, and their associates, under the general railroad laws of the State. (See Civil Code (1910), § 2585, par. 11, 12; § 2586.) It is unnecessary to determine whether, if there was a private sale of the line of the Buena Vista & Ellaville Railroad Company to the Savannah & Western Railroad Company, or a consolidation of the two companies, and if the properties of the Savannah & Western Railroad Company were sold at a judicial sale and were conveyed by a purchasing committee to the Central of Georgia Railway Company, this would vest in the latter company the power of eminent domain originally conferred upon the Buena Vista & Ellaville Railroad Company. The undisputed evidence shows that the line of the old Buena Vista & Ellaville Railroad Company, now held by the Central of Georgia Railway Company, is about two miles distant from Hampton street,

and between that point and the city of Americus lies the track of the Southwestern Railroad Company, held by the Central of Georgia Railway Company under lease. If the last-named company succeeded to the power of eminent domain which was vested originally in the Buena Vista & Ellaville Railroad Company, it could not pass over a gap of two miles from the terminus of the original road, and condemn a right of way longitudinally in Hampton street in the city of Americus. The act of 1913 (Acts 1913, p. 490) did not purport to confer any such power. It declared that the Mayor and City Council of Americus might authorize and grant permission to steam railway companies, "whose rights may now or hereafter terminate in or run through the city of Americus, to approach and lay their terminals through the streets of said city and to run tracks on such streets in the city of Americus as said Mayor and City Council of Americus may approve and consent thereto, upon such terms and conditions as said Mayor and City Council of Americus may designate and impose." This must be read in connection with the constitutional provision prohibiting the taking or damaging of private property for public purposes without just and adequate compensation being first paid, and in connection with the former adjudication that condemnation was necessary, as to the particular street here involved, before the railroad track could be laid therein. Nor is the case aided by the terms of the Civil Code (1910), § 2585, par. 5; for, as above stated, the Central of Georgia Railway Company has no track of its own which touches, intersects, or is contiguous to Hampton Street, and the terminus of the former Buena Vista & Ellaville Railroad is some two miles therefrom. The law never contemplated that a railroad company could lay its track longitudinally in such a street of a municipality, two miles away from its railroad, exercising the right of eminent domain for that purpose.

2. It was contended that the decision in the former case (142 *Ga.* 686, supra) was conclusive as to this and other points in the present case. The decision then made involved a hearing on an application for an interlocutory injunction, and not a final adjudication upon the merits of the case. The law, as declared by this court, became binding upon the court below, as applied to the facts then involved. It was held, that where the owner of a tract of land caused it to be laid off into lots, with an intervening street

dedicated to the public use, the public, under such grant, had only an easement in the street, and the title of an abutter extended to the middle of the street, burdened with the easement of the street; that the laying of railroad-tracks longitudinally in such a street and the operation of a commercial railroad therein, would impose an additional servitude for which the abutter would be entitled to compensation; and that a railroad company, before it could lawfully lay its track in such street, must first pay or tender to an owner of abutting property just and adequate compensation for the damages consequential from the construction of the track and the uses to which it would be put. At that time there was no effort to exercise the right of eminent domain, and the question of whether the Central of Georgia Railway Company had authority to exercise that power at the point in question was not involved. A ruling that a railroad-track could not be laid down in Hampton street and used by a steam railroad, without first paying just and adequate compensation to an owner of abutting property, did not adjudicate that under its charter, or under the general law, the particular railroad in question had authority to exercise the right of eminent domain at that place, or that proceedings subsequently begun for that purpose were in accordance with the provisions of the law.

3. It was further urged, on behalf of the defendant in error, that assessors were appointed by the parties, who made an award, from which an appeal was entered by the present plaintiffs, which is still pending; that in such proceeding they set up substantially the same questions as were raised in the present suit; and that they could not therefore maintain the present action. In *Atlanta Terra Cotta Co.* v. *Georgia Railway &c. Co.*, 132 *Ga.* 537 (64 S. E. 563), it was held, that, in condemnation proceedings under the statute regulating the exercise of the right of eminent domain by a railroad company, the assessors could only determine the amount of compensation to be paid, and could not pass upon the legal power of the company to institute such proceedings; and that the remedy of the landowner, for an illegal effort to exercise the power, was to apply to a court having equitable jurisdiction to enjoin the proceeding. On an appeal from the award of the assessors, the issue can not be so broadened as to raise the question of the power to exercise the right of eminent domain.

What facts may be developed on the final trial can not now be foreseen. But, as they are now made to appear in the record, upon the hearing of the application for an interlocutory injunction it should have been granted.

What has been said above renders it unnecessary to discuss various questions raised as to the sufficiency of the notice given to the present plaintiffs of the intention to exercise the right of eminent domain by the railway company, or whether any irregularity in the notice was cured by ratification or waiver, or whether, if the defendant railway company could exercise the right of eminent domain for the purpose of laying a track on Hampton street, the manner in which it would be laid and operated would create a nuisance.    *Judgment reversed. All the Justices concur.*