*Erle B. Askew* and *James L. Dowling,* contra.

---

### SAVANNAH RIVER TERMINALS COMPANY *v.* SOUTHERN RAILWAY COMPANY.

1. The Savannah River Terminals Company is a railroad company under the laws of this State, and has the right of eminent domain. As a railroad, it has authority to cross the tracks of other railroads, or to join with the tracks of other railroads at any point in its route, upon the conditions laid down in the Code of 1910, § 2585, par. 6 (Acts 1892, p. 43).

2. The provision just cited of the general railroad incorporation act of 1892, which confers upon a chartered railroad company the power "to cross, intersect, or join, or unite its railroads with any railroad heretofore or hereafter to be constructed, at any point in its route," upon conditions stated, was not repealed by the railroad-commission act of 1908 (Acts 1908, p. 68, Civil Code of 1910, § 2664), which confers upon the railroad commission the "power and authority, when in its judgment practicable and to the interest of the public, to order and compel the making and operation of physical connection between lines of railroad crossing or intersecting each other, or entering the same incorporated town or city in this State."

3. The right of a railroad company to join its tracks with the tracks of another railroad company is not absolute in all circumstances and without qualification. Where a terminals company, operating within the limits of a single city, has two connections with the main line of another railroad entering that city (one a crossing and the other a direct switch connection) within the distance of a city block, and the terminals company seeks, under the right of eminent domain, to make an additional connection with the main-line track of the other railroad company at a point within the length of a city block from the present switch connection, and, in order to do so, finds it necessary to cross two spur-tracks of the railroad company leading from its main line, a court of equity will inquire whether a reasonable necessity exists for the additional connection, and whether the additional connection, if made, will materially interfere with the railroad company in the discharge of its public duties and in the free exercise of its franchises.

4. Under the pleadings and evidence in this case, the judge of the superior court did not abuse his discretion in granting the interlocutory injunction.

Nos. 668, 669. June 14, 1918.

Injunction. Before Judge Hammond. Richmond superior court. October 5, 1917.

*Samuel H. Sibley,* for plaintiff in error.

*Callaway & Howard* and *Barrett & Hull,* contra.

GEORGE, J. -The Southern Railway Company reaches the City of Augusta, Georgia, from the South Carolina side of the Savannah river by a single track over a drawbridge capable of carrying only one track. About sixty feet from the southern abutment of the bridge, on the Georgia side of the river, a switch is inserted in the main-line track of the Southern Railway Company, which diverges toward its freight-depot and yards located between the intersection of Reynolds and Washington streets, and from this connection it furnishes also the railroad-tracks passing through its yards and across Center street and on to the embankment of the levee on the south side of the Savannah river adjacent to the city

wharves, which are freight-depots for the line of river boats plying between Augusta and Savannah. After leaving the bridge the main-line track of the Southern Railway Company enters Washington street, along which it passes to. the union passenger station at Augusta. Near the intersection of Washington and Reynolds streets two switches diverge northeastwardly from the main-line track, connecting two spur-tracks serving the cotton platform and overhead crane in its depot yards. Not quite midway of the block between Reynolds and Broad streets the Savannah River Terminals Company crosses the main-line track of the Southern Railway Company in Washington street with its double line railroad-track. Within the same block and just north of Broad street two switches diverge from the main-line track extending in a northwestwardly direction. The distance between the Southern abutment of the railway bridge and Broad street is two city blocks. The Savannah River Terminals Company connects by switch with the main-line track of the Southern railway in Washington street and just north of Broad street. The track with which this connection is made is operated as the Augusta and Summerville Railroad, but in actuality the connection with the Augusta and Summerville Railroad in Washington street is a direct connection with the Southern main line, even if the track operated by the Augusta and Summerville is not a part of the Southern main-line track. It thus appears that, within the distance of two city blocks from the Southern abutment of the railway bridge, the single main-line track of the Southern Railway is pierced by five separate sets of switches and crossed by a double-track line of railway. The Savannah River Terminals Company was chartered by the secretary of State as a railroad company to build certain railroad-tracks described in its charter, and to operate the same within the City of Augusta. It procured a franchise from the City of Augusta, under which it was required to connect with the tracks of the Southern Railway Company in Washington street just north of Reynolds street and to connect with the track of the Augusta and Summerville Railroad just south of Reynolds street in Washington street. The latter connection was made, as described above. The Southern Railway Company refused to allow the former connection with its track to be made, and the terminals company proceeded to condemn the right to make the connection, when the proceedings were enjoined

by the superior court of Richmond county. In order to reach the main line of the Southern Railway Company at or just north of the intersection of Reynolds and Washington streets, it was necessary for the terminals company to condemn the right to cross the two spur-tracks of the former company, and the Southern Railway Company filed separate petitions for injunctions against the terminals company, the first to restrain the proceeding to acquire the right to make the connection with the main-line track of the Southern Railway Company, and the second to enjoin the proceeding to acquire the right to cross the two spur-tracks. The additional connection with the Southern Railway Company is approximately one city block north of the present switch connection with the Augusta and Summerville Railroad, and through that road with the main line of the Southern Railway Company. On the interlocutory hearing, the injunctions were continued until the further order of the court, and the terminals company sued out two separate bills of exceptions; but the two cases were heard together in the court below and in this court, and will be treated as one case here.

The main contentions made by the Southern Railway Company in its petition to enjoin the condemnation proceeding are: (1) The condemnor is not a railroad company within the meaning of the laws of this State, and therefore it is not authorized to institute and prosecute the condemnation proceedings. (2) Section 2656 and par. 6 of section 2585 of the Civil Code, giving a railway company the right to join its track with the track of another company of the same gauge, were repealed by the railroad commission acts of 1907 and 1908, and especially by so much of the latter act, now appearing as section 2664 of the Civil Code, as confers on the railroad commission the "power and authority, when in its judgment practicable and to the interest of the public, to order and compel the making and operation of physical connection between lines of railroad crossing or intersecting each other, or entering the same incorporated town or city in this State." (3) The proposed connection is unnecessary, and will result in irreparable damage to the Southern Railway Company, and will seriously impair the enjoyment of its franchises and prevent it from carrying on its business as a common carrier of freight and passengers safely, properly, and conveniently, and will destroy the usefulness of im-

portant parts of its terminal facilities in the City of Augusta, etc. Upon the questions of fact indicated the evidence was conflicting. It is unnecessary to set it out at length.

1, 2. We are of the opinion that the Savannah River Terminals Company is a railroad company. Its tracks lie wholly within a single city, Augusta, and its business is principally to transfer freights within the city from one common carrier to another; but within its limited sphere it is a common carrier and its business is of a public nature. It is subject to the jurisdiction of the railroad commission of Georgia, and it is to be governed and controlled by the laws of Georgia applicable to common carriers of freight. It was chartered by the secretary of State as a railroad company. *Bridwell* v. *Gate City Terminal Co.,* 127 *Ga.* 520 (56 S. E. 624, 10 L. R. A. (N. S.) 909). As a railroad company it has authority to take private property for public use, by first making just compensation therefor. Under section 2585, par. 6, codified from the act of 1892 (Acts 1892, p. 43), it also has the authority "to cross, intersect, or join, or unite its railroads with any railroad heretofore or hereafter to be constructed, at any point in its route, or upon the ground of any other railroad company, with necessary turnouts, sidings, and switches, and other conveniences necessary in the construction of said road; . . but in crossing another railroad, either over, under, at grade level, or otherwise, it shall be at the expense of the company making the crossing, and in such way and manner, at the time of construction, as not to interfere with said railroad in its regular travel or business." Under an act of 1874 (Acts 1874, p. 94), codified as section 2656 of the Civil Code, it has the power, at its own expense, to join its track by proper and safe switches with other railroads of the same gauge, where such other roads touch it at any point along its line, or where such roads have the same terminus. And as a railroad company it may acquire the right, by condemnation, to cross, intersect, or unite its railroad with any other railroad heretofore or hereafter constructed in this State, subject to the constitutional provision that just compensation must be first made for all damages resulting therefrom. Section 2656, supra, though taken from the act of 1874, has never been repealed. In substance it was re-enacted in the general railroad incorporation act of 1892, and now appears in section 2585, supra, as par. 6 thereof. These sections were not

repealed by section 7 of the act of 1907 (Acts 1907, p. 76), nor by the act of 1908 (Acts 1908, p. 68), contained in section 2664 of the Civil Code. The act of 1908 is substantially a re-enactment of the act of 1907, and, in so far as pertinent here, provides: "It [the railroad commission] shall have power and authority, when in its judgment practicable and to the interest of the public, to order and compel the making and operation of physical connection between lines of railroad crossing or intersecting each other, or entering the same incorporated town or city in this State." The power is conferred upon the railroad commission to compel the making and operation of physical connection between lines of railroad crossing or intersecting each other, or entering the same incorporated town or city in this State; but the right of a railroad company to cross, intersect, or connect with another railroad is not taken away. The doctrine of implied repeal is not favored, and there is no such irreconcilable repugnancy between the acts of 1874 and 1892 and the later acts of 1907 and 1908 as to require its application here.

3, 4. While the terminals company has the right and power to institute condemnation proceedings to acquire the right to cross the spur-tracks of the Southern Railway Company and to connect with the main line of that company, its right to do so is not absolute in all circumstances and without qualification. We are not unmindful of the case of *Savannah, Florida & Western Railway Co.* v. *Postal Telegraph Co.*, 112 *Ga.* 941 (2), 943 (38 S. E. 353), wherein it was ruled: "In a proceeding instituted by a telegraph company, under the provisions of the act of December 20, 1898, to condemn so much of the right of way of a railroad company as may be necessary for the erection, maintenance, and operation of its telegraph lines, it is not essential that the telegraph company should affirmatively show that, in order to erect, maintain, and operate its telegraph lines between the points proposed, it is necessary for it to condemn such right of way; nor is it essential for it to show that it is necessary for it to use the particular portions of such right of way which it proposes to condemn." Neither have we overlooked the ruling made in *Savannah, Florida & Western Railway Co.* v. *Postal Telegraph Co.*, 115 *Ga.* 554 (2), 559 (42 S. E. 1), where it was ruled that the "necessity for taking private property for public use is a question for legislative determination."

It is true that when the legislature has authorized condemnation for a public purpose, the matter of necessity is not generally issuable, unless the legislature has seen fit to make it so in the statute. In the condemnation of land for a right of way a railroad company can take only so much land as may be necessary for its purposes. Civil Code, § 2585, par. 3, 4. The right of one railroad to join its track with the track of another of the same gauge, under section 2656, supra, is not made to depend upon necessity, either absolute or reasonable, by the terms of that section. It is also true that the right of a railroad company, under section 2585, par. 6, to cross, intersect, join, or unite its railroad with any other railroad heretofore or hereafter to be constructed is not, under the terms of this section, made to depend upon a necessity. However, in the case of *Western & Atlantic Railroad Co.* v. *Western Union Telegraph Co.,* 138 *Ga.* 420 (3), 425 (75 S. E. 471, 42 L. R. A. (N. S.) 225), it was ruled that "A telegraph company may not condemn a railroad company's right of way on both sides of the track, at least without making it appear that it is necessary to occupy both sides and that the railroad company's operation of its trains will not be materially interfered with." In the opinion in that case the case of *Savannah &c. Ry. Co.* v. *Postal Telegraph Co.,* 112 *Ga.* (supra), was referred to and discussed. It was said, in effect, that the case was no broader than its facts, and that the court was dealing there with the right of the telegraph company to condemn one strip of land on the right of way of the railroad company only, whereas in the case then under review the telegraph company proposed to condemn two strips, one on each side of the track of the railroad company. In the present case the terminals company crosses the main line of the Southern Railway, and has in actuality a switch connection with the main line of that company within the distance of one city block from the point where the present connection is sought to be made. It appears that the terminals company operates wholly within the City of Augusta, and its principal business is to deliver freight to carriers operating out of the City of Augusta and to its customers in the City of Augusta. If it should desire to join its track with the main line of the Southern Railway Company at every point where the track of the latter company crosses a street of the City of Augusta, it is not conceivable that a court of equity would hold itself powerless

to inquire into the necessity for so doing. The judge of the superior court was authorized to find that the existing physical connection between the terminals company and the Southern Railway Company in the City of Augusta afforded ample facilities for the interchange of freights. In these circumstances we are of the opinion that before the terminals company can acquire, under the right of eminent domain, the power to cross the spur-tracks and to join its track with the main-line track of the Southern Railway Company, as proposed, there must be some reasonable necessity therefor. No general rule can be laid down as to what will constitute a reasonable necessity. All the facts and circumstances must be considered. If the public interest will be subserved by the making of the additional connection, or if the advantage to the terminals company will largely exceed the disadvantage to the Southern Railway Company, reasonable necessity may well be said to exist, although actual necessity may not exist. If a reasonable necessity exists, the right to exercise the power is still dependent upon the condition that the exercise thereof will not destroy or materially interfere with the use by the Southern Railway Company of its property. 2 Lewis on Eminent Domain (3d ed.), § 440. Whether the proposed connection would materially interfere with the Southern Railway Company in the discharge of its public duties, and in the free exercise of its franchises, was a question for the judge upon the interlocutory hearing. See *Savannah &c. Ry. Co.* v. *Postal Telegraph Co.*, supra; *Atlanta & West Point R. Co.* v. *Atlanta &c. R. Co.*, 124 *Ga.* 125 (52 S. E. 320); *Hoke* v. *Georgia R. Co.*, 89 *Ga.* 215 (15 S. E. 124). Under the pleadings and evidence in this case, it can not be said that the judge abused his discretion in granting the interlocutory injunction.

Some of the evidence considered by the judge upon the interlocutory hearing was objected to as mere conclusions of the witnesses, and conclusions upon the very question to be decided by the court. These witnesses, while qualifying as experts, nevertheless gave the grounds upon which the conclusions were based. Opinion evidence, though erroneously admitted on an interlocutory hearing for injunction, will not necessarily require a reversal, if there be legal evidence in the record sufficient to sustain the judgment rendered. *Southern Cotton Oil Co.* v. *Overby*, 136 *Ga.* 69 (70 S. E. 664). This rule, however, is to be cautiously applied.

Some of the evidence in the present record was objectionable upon the grounds stated; but we do not feel authorized, under all the facts in the record, to reverse the judgment on that account.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*