GEORGIA POWER COMPANY *v.* FOUNTAIN *et al.*

No. 17177. SEPTEMBER 11, 1950. REHEARING DENIED OCTOBER 13, 1950.

*Miller, Miller & Miller, MacDougald, Troutman, Sams &
Schroder,* and *T. M. Smith,* for plaintiff in error.

*Smith, Kilpatrick, Cody, Rogers & McClatchey, E. D. Smith
Jr.,* and *Harry S. Baxter,* for persons at interest, not parties.

*Victor Davidson, Jackson & Jackson,* and *Frank O. Evans,*
contra.

*G. S. Peck, J. Walter Mason, Augustine Sams, Harold Sheats,
Josiah T. Rose, Walter McElreath,* and *Grigsby H. Wotton,* for
persons at interest, not parties.

CANDLER, Justice. (After stating the foregoing facts). This
case involves the doctrine of election of remedies and the prin-
ciple of estoppel resulting therefrom. *Beard* v. *Beard,* 197 *Ga.*
487 (29 S. E. 2d, 595). Estoppel by election results where a
choice is exercised between inconsistent remedies. *Chapple* v.
*Hight,* 161 *Ga.* 629 (131 S. E. 505). The election and prosecu-
tion of an available remedy is a bar to the pursuit later of an
inconsistent one. *Hardeman* v. *Ellis,* 162 *Ga.* 664 (135 S. E.

195). An election of remedies has been defined as the choosing between two or more different and coexisting modes of procedure and relief allowed by law on the same state of facts. 18 Am. Jur. 129, § 3. It has been said that the so-called "inconsistency of remedies" is in reality not an inconsistency between the remedies themselves, but must be taken to mean that a certain state of facts, relied on as the basis of a certain remedy, is inconsistent with and repugnant to another state of facts relied on as the basis of another remedy. 18 Am. Jur. 135, § 12. Two remedies are inconsistent, if the assertion of one involves the negation or repudiation of the other. *Peterson* v. *Lott,* 200 *Ga.* 390 (37 S. E. 2d, 358). A proceeding at law for the purpose of ascertaining and fixing the amount to be paid for private property which is being taken for a public use is inconsistent with the remedy afforded by equity to prevent the taking of private property for purposes other than a public use. *Bibb Brick Co.* v. *Central of Georgia Ry. Co.,* 150 *Ga.* 65 (102 S. E. 521). The first remedy inferentially admits that the taking is necessary for a public use, and value is the only issue to be determined in the proceeding; the latter denies the necessity for such a taking, and seeks to prevent the same. And this court has said: "Where the owner of an easement in land takes part in proceedings to condemn his interest for public purposes, selecting an assessor, offering evidence, etc., and after an award accepts full payment, such owner will be thereby estopped from urging objections, in an equitable proceeding for injunction, etc., to the condemnation proceedings." *Central of Georgia Ry. Co.* v. *Bibb Brick Co.,* 149 *Ga.* 38 (99 S. E. 126). See also *Atlantic & Birmingham R. Co.* v. *Penny,* 119 *Ga.* 479 (46 S. E. 665) ; *Georgia Granite R. Co.* v. *Venable,* 129 *Ga.* 341, 348 (58 S. E. 864) ; Winslow *v.* B. & O. R. Co., 208 U. S. 59 (28 Sup. Ct. 190, 52 L. ed. 388) ; 10 R.C.L. 210, § 179. And there is no merit in the contention here made that the rule announced and applied by this court in *Central of Georgia Ry. Co.* v. *Bibb Brick Co.,* supra, should not be applied in the present case, because the plaintiffs, as the interested landowners, had not accepted the awards made for the property involved, and this is true for these several reasons:

(a) "No suitor may prosecute two actions in the courts at

the same time, for the same cause, and against the same party, and in such a case the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously; and the pendency of the former shall be a good defense to the latter, if commenced at different times." Code, § 3-601; *Johnson* v. *Epting*, 185 *Ga.* 667 (196 S. E. 413). After the trial judge refused to grant a temporary injunction, the plaintiffs, by conduct, voluntarily abandoned their equitable suit, and elected to pursue an inconsistent remedy, by thereafter participating, as they did, personally and by counsel, in the condemnation proceedings. 20 C. J. 32, § 21; Intertype Corp. *v.* Pulver, 101 Fla. 1176 (132 So. 830, 135 So. 793).

(b) The awards made in the condemnation proceedings and afterwards filed by the assessors in the office of the clerk of the superior court were judgments rendered by a competent tribunal. *Thomas* v. *Central of Georgia Ry. Co.*, 169 *Ga.* 269 (149 S. E. 884). The defendant, after the awards were made by the assessors, had no right to abandon the condemnation proceedings and by so doing relieve itself of liability to pay the awards; and the plaintiffs, as condemnees, were estopped to say that the assessors had no jurisdiction to make the awards. *Central of Georgia Ry. Co.* v. *Thomas*, 167 *Ga.* 110 (144 S. E. 739).

(c) The validity of the awards or judgments rendered in the condemnation proceedings by the assessors, as a tribunal competent to fix the rights and liabilities of the parties with reference to the matters and things involved, could not be collaterally attacked in the plaintiff's equitable suit, and a further prosecution of the latter proceeding, as pleaded, would in law amount to such an attack. *Hogg* v. *City of LaGrange*, 202 *Ga.* 767 (44 S. E. 2d, 760).

(d) The defendant paid the full amount of the awards into the registry of the court for the use and benefit of the plaintiffs, after they had refused to accept it when tendered, and such deposit under the statute is the legal equivalent of payment to the plaintiffs. Code, § 36-602; *Oliver* v. *Union Point & White Plains R. Co.*, 83 *Ga.* 257. (9 S. E. 1086); *Pilgreen* v. *City of Atlanta*, 204 *Ga.* 710 (51 S. E. 2d, 655). And after awards for the property involved in the instant case were made and filed, as required, in the office of the clerk of the superior court, and the

condemnor paid the full amount so awarded into the registry of the court for the use and benefit of the condemnees—they having refused to accept it when previously tendered—the defendant became vested with provisional title for the easements sought to be condemned, which could be defeated as by a condition subsequent if it should fail to pay any additional amount recovered against it by final judgments on the appeals; but not otherwise. *Oliver* v. *Union Point & White Plains R. Co.*, supra.

(e) The plaintiffs' appeals are now pending for trial before a jury in a court of competent jurisdiction and the plaintiffs will not be permitted to abandon them for the purpose of pursuing another inconsistent remedy. "It is well settled that one can not, in one court, set up matter from which he receives a benefit by an adjudication in his favor, and in a subsequent action repudiate his position taken in the first. In other words, courts of justice will not allow a party to blow hot and cold." *Neal Loan & Banking Co.* v. *Chastain*, 121 *Ga.* 500 (49 S. E. 618). Consequently, the trial judge should have found in favor of the defendant's plea of estoppel and terminated the instant case, it appearing without any question from the evidence submitted that the facts alleged therein were true. It was error not to do so, and since all subsequent proceedings taken in the case were nugatory, no ruling is necessary or required on any other question presented by the writ of error. *Swofford* v. *Glaze*, 206 *Ga.* 574 (57 S. E. 2d, 823).

*Judgment reversed. All the Justices concur, except Duckworth, C.J., Head and Hawkins, JJ., who dissent.*

ALMAND, Justice, concurring. I am of the opinion that the judgment in this case is right, by reason of the laches of the defendant in error.

The owner in this case sought to raise the issue of necessity by filing a petition in equity to enjoin the condemnation at its inception. In this petition, he named an assessor and authorized him to proceed with the other assessor if the owner's prayer for an interlocutory injunction was denied. After a hearing on the application for a temporary injunction, the judge dissolved a restraining order and refused a temporary injunction. This, in effect, was a signal for the assessors to proceed to assess the property in the condemnation proceeding. From this judg-

ment the owner filed no appeal or exceptions. The law gave him a right to go into a court of equity to determine the right of the condemnor to take his property. He had his day in court. After the court had determined that the condemnor was proceeding lawfully to condemn the property, and with the assistance of the owner's assessor an award was made and the amount of the award was tendered to the owner, and upon his refusal to accept it the same was paid into court, and the condemnor thereafter went into possession and made permanent improvements at a cost of several thousand dollars—it would now be inequitable to permit the owner to assert that he had the right to try the issue of necessity before a jury, on a petition in which he had been denied relief and in which judgment he acquiesced. This is true, even though the owner refused tender of the amount fixed by the assessors, and had an appeal pending from this award. In this case the condemnor, after the owner's petition for injunction was denied, proceeded with the condemnation proceeding, as the law permitted it to do. It has paid the amount of the award into court and has entered into possession of the property, making valuable improvements thereon, as the law said it had a right to do; and, after all this has been done, it would be neither fair nor just to permit the owner to retry the issue of necessity. Even though the fact that the owner did not appeal from the interlocutory order of the judge denying an injunction could not operate as a final and conclusive judgment on the issue of necessity, the owner had the right when the case was in order for final judgment, to have the cause advanced and expedited for the final hearing (Code, § 37-1101). The record in this case shows that the owner's petition for injunction was filed on November 13, 1948, returnable to the January term, 1949, of Wilkinson Superior Court. The interlocutory order denying a temporary injunction was entered on December 17, 1948, and the assessors' award was made on January 7, 1949. Shortly thereafter, the amount of the award was paid into court and the condemnor took possession of the property. It appears from the record that the lines and structures placed on the property by the condemnor were finished shortly prior to the trial of the case before a jury in January, 1950. The petitioner's prayer for a permanent injunction could have been tried by a jury at

the January term, 1949, and the April, July, and October terms of court passed without any trial; and nothing appears in the record to indicate that the condemnor did anything that prevented the owner from getting a trial earlier than January, 1950, or that an earlier trial was not available. I am of the opinion that the owner in these circumstances, by standing by for a year and failing to prosecute his case to a final judgment, while the condemnor was placing valuable improvements on the property, was barred by laches from insisting upon having a jury pass on the issue of necessity.

In *Wright* v. *City of Metter*, 192 *Ga.* 75, 76, 77 (14 S. E. 2d, 443), this court held. "The doctrine of laches, equitable in nature and origin, concerns itself with the situation of petitioner as the applicant who seeks equity, and not with the infirmities of the legal process sought to be arrested. When applicable, it says to him that, despite the right which might be given by law, or which he might ordinarily enjoy and be able to assert, he by reason of delay, neglect, or other conduct has become barred as to equitable relief on his petition. In other words, by reason of the infirmities in his own situation, he may not in equity assert or have his legal rights measured." A person is not entitled to injunctive relief where it is shown that he has been careless in guarding his rights, and if he has been subjected to a loss, it was because of his not attending to his own interests at the proper time. *Dulin* v. *Caldwell & Co.*, 28 *Ga.* 117. In *Wood* v. *Macon & Brunswick Railroad Co.*, 68 *Ga.* 539, it was ruled that the writ of injunction is designed to prevent and not to undo what has been done, and without strong reason therefor, if delayed until progress (in laying out a right-of-way) has been made, injunction should not be granted. See headnote 6, *Wood* v. *Macon & Brunswick Railroad Co.*, supra. In *Holt* v. *Parsons*, 118 *Ga.* 895 (45 S. E. 690), it was held that a person is not entitled to an injunction when, with full knowledge of his rights, he has been guilty of delay and laches in asserting them and has negligently suffered large expenditures to be made by another party, upon whom great injury would be inflicted by the grant of an injunction.

Though it may be true that the condemnor in this case had full notice of the owner's contention and claim, by reason of the

filing of the suit for permanent injunction at the beginning of the condemnation proceeding in this case (Code, § 37-117), yet the fact that the petition for a permanent injunction was pending does not of itself preclude the conclusion that the owner has been guilty of laches, in that the failure to *prosecute* a suit may result in the same consequences as the failure to *institute* a suit. *Tinsley* v. *Rice*, 105 *Ga.* 285 (31 S. E. 174); Johnston v. Standard Mining Co., 148 U. S. 360 (13 Sup. Ct. 585, 37 L. ed. 480); Wells Nevada Nat. Bank *v.* Barnett, 298 Fed. 689 (43 L. ed. 916). In other words, reasonable diligence must be exercised in prosecuting to trial the final issue before a jury; and if, by reason of a delay in the plaintiff asserting his rights to a final trial, the opposite party is permitted to expend money or suffer irreparable injury thereby, the equitable principle of laches will be applied. A man who, possessing full knowledge of his rights, has stood by, and by his conduct encouraged others to expend moneys in contravention of rights for which he afterwards contends, cannot come to the court for relief by perpetual injunction, however clear his right or whatever be the value of his right. Kerr on Injunctions (5th ed.) p. 36.

Though the statutory provision regarding condemnation proceedings is silent as to when the owner of property sought to be condemned can raise the question of the right of the condemnor to take his property, until the General Assembly fixes the time in which the question can be determined by a court, the issue of timely action on the part of the owner must be determined by the court on the facts and circumstances of the case under consideration.

HAWKINS, Justice, dissenting. I dissent from the ruling of the majority of my brethren, to the effect that the condemnee was estopped to prosecute his equitable proceeding for injunction, raising the question of necessity for the taking of the plaintiff's property for a public purpose, because of his participation in the statutory condemnation proceeding under the Code, Chapter 36-3, by the appointment of an assessor, the introduction of evidence as to the value of the land sought to be condemned, and the filing of an appeal from the award of the assessors. I think that the conclusion reached by the majority is wrong, for the reason that the plaintiff in the present proceeding is not, as

held by the majority, prosecuting two actions in the court at the same time for the same cause of action against the same party, which is prohibited by Code § 3-601, in that the statutory condemnation proceeding was not instituted and was not prosecuted by the present plaintiff, but by the defendant, the condemnor, and the plaintiff, by participating therein was defending, and not prosecuting, the action. In that proceeding the question of the necessity for the taking of his property could not be raised, but the only question for determination in that case by the assessors, and by the superior court on appeal, is the amount of compensation to be paid for the land taken. *Atlanta Terra Cotta Co.* v. *Georgia Railway and Electric Co.*, 132 *Ga.* 537 (64 S. E. 563). The underlying and fundamental principle upon which the right to take the property of any private citizen against his will by the delegated sovereign power of the State of eminent domain is that it is necessary to do so for a public purpose; and the only way in which the question of public necessity can be raised in a condemnation proceeding under the Code, Chapter 36-3, is by an equitable petition for injunction. *Harrold* v. *Central of Georgia Railway Co.*, 144 *Ga.* 199 (86 S. E. 552); *Piedmont Cotton Mills* v. *Georgia Railway and Electric Co.*, 131 *Ga.* 129, 136 (62 S. E. 52); *Hogg* v. *City of La-Grange*, 202 *Ga.* 767 (44 S. E. 2d, 760); *Western and Atlantic Railroad Co.* v. *Western Union Telegraph Co.*, 138 *Ga.* 420 (75 S. E. 471); *Savannah River Terminals Co.* v. *Southern Railway Co.*, 148 *Ga.* 180 (3), 186 (96 S. E. 257).

The present case differs from that of *Bibb Brick Co.* v. *Central of Georgia Railway Co.*, 150 *Ga.* 65 (102 S. E. 521), cited by the majority as authority for the ruling there made, in that there the condemnee accepted the amount awarded by the assessors as in full payment, and entered no appeal from their award. In the instant case, the condemnee refused to accept the amount awarded by the assessors, but entered and now has pending in the superior court an appeal from that award. He is entitled to have determined the question of necessity for the taking of his property, and can do this only in this equitable proceeding. He is, therefore, not prosecuting two actions in the court at the same time for the same cause of action, and against the same parties, but is defending the condemnation proceeding, wherein

the only question involved is one of value, and is prosecuting his equitable proceeding wherein the question of the necessity for the taking is involved—two separate and distinct proceedings, neither of which involves the question to be determined in the other.

I am authorized to say that Duckworth, Chief Justice, and Head, Justice, concur in this dissent.